[No. D009538. Fourth Dist., Div. One. July 27, 1989.]

MITSUI MANUFACTURERS BANK, Petitioner, v.
THE SUPERIOR COURT OF SAN DIEGO COUNTY, Respondent;
SQUIDCO CORPORATION OF AMERICA, INC., et al., Real
Parties in Interest.

COUNSEL

Lillick & McHose, David E. Kleinfeld, John E. Timmons and Alix James Kocher for Petitioner.

No appearance for Respondent.

John W. Dickerson, Jr., for Real Parties in Interest.

OPINION

WORK, Acting P. J.—In this matter we grant petitioner Mitsui Manufacturers Bank's (Mitsui) request for a writ of mandate directing the Superior Court to vacate its order denying Mitsui's motion for summary judgment and grant it summary judgment on the cross-complaint of real parties in interest, The Squidco Corporation of America, Inc. (Squidco), Fisherman's Supply Center, Inc., Joseph M. Elson, Anne Marie Elson, John N. Elson, Venus Elson and Eric S. Dye. In doing so, we reject real parties' contention they have raised a triable issue of material fact regarding whether Mitsui tortiously breached the covenant of good faith and fair dealing in a commercial transaction arising out of an arms-length routine lender/borrower contract.

I

The underlying dispute arose when real parties defaulted on commercial short-term loans after Squidco borrowed approximately $1,650,000 in various notes guaranteed by the Elsons, Dye and Fisherman's Supply Center and subject to a security agreement. It was understood by Mitsui and the borrower that Squidco needed long-term development funds and would replace Mitsui's short-term loans with financing from other institutions, most within a year. These short-term loans were renewed from time to time while Squidco unsuccessfully attempted to obtain a long-term lender other than Mitsui. Eventually, Squidco defaulted on all Mitsui notes. When Squidco rejected alternative long-term financing arrangements proposed by Mitsui and remained in default, Mitsui demanded full payment. Receiving none, it not surprisingly sued for money, enforcement of the continuing guaranties and foreclosure of security interest.

The real parties cross-complained for tort damages alleging Mitsui breached the covenant of good faith and fair dealing by reneging on its alleged oral promise to renew Squidco's short-term credit indefinitely until

it was able to secure substitute long-term financing from another lender and that, should negotiations for long-term financing by other lenders prove fruitless, it would provide the long-term financing. Squidco also alleges Mitsui orally promised to provide long-term financing itself if needed, implying Mitsui would provide that long-term financing without requiring Squidco to subject various parcels of real property to a blanket trust deed which would permit Mitsui to purchase them all for a single credit bid at a single trustee sale in case of default. Squidco claims Mitsui's refusal to extend long-term financing without a blanket trust deed was tortious.[1]

In the face of these allegations, Mitsui asked summary judgment arguing the ordinary arms-length commercial lender/borrower relationship was insufficient as a matter of law to generate tort damages for the breach of the covenant of good faith and fair dealing. The trial court refused, but on the facts of this case we conclude it erred. We reject real parties' argument that the tort doctrine which has been extended only to situations where there are unique fiduciary-like relationships between the parties, should encompass normal commercial banking transactions. We also reject real parties' request for permission to amend to substitute a cross-complaint for contractual breach of the covenant of good faith and fair dealing because they can get any relief to which they are entitled under that theory, from their affirmative defense to Mitsui's complaint in which that theory is interposed.

## II

Because of its drastic nature, summary judgment should not be granted unless the admissible evidence shows there is no triable issue as to any material fact and the moving party is entitled to judgment as a matter of law. (*Palma* v. *U.S. Industrial Fasteners, Inc.* (1984) 36 Cal.3d 171, 183 [203 Cal.Rptr. 626, 681 P.2d 893].)

In denying Mitsui's motion for summary judgment on the cross-complaint, the court declared it found a triable issue of fact established by John Elson's declaration at page 6, paragraph 18. The triable issue of fact is not otherwise identified, but John Elson's declaration, as referenced, contains no relevant facts.[2] The statements there, at best, suggest Mitsui may

---

[1] Real parties do not state any cross-action for fraud or for bad faith denial of the existence of a contract. The failure to provide long-term financing was the basis for a multimillion dollar judgment which was reversed on appeal in *Kruse* v. *Bank of America* (1988) 202 Cal.App.3d 38 [248 Cal.Rptr. 217], based upon those tort theories. The existence of theories of liability allowing tort damages in contractual situations was discussed at length in *Foley* v. *Interactive Data Corp.* (1988) 47 Cal.3d 654, 693-700 [254 Cal.Rptr. 211, 765 P.2d 373], with the result being that the court refused to extend them to wrongful discharge actions. Real parties do not request leave to amend their cross-complaint to allege such causes of action.

[2] The paragraph relied on by the court, in its entirety is: "Despite my request to do so, Mitsui never provided Squidco of an accounting of Squidco's loans. In fact, the loan history

have failed to fully conform to the terms of its original loan agreement with Squidco. While they may be relevant to show there is a dispute as to whether there was a breach of contract, they do not infer there is a triable issue of material fact as to the existence of a cause of action for tortious breach of the covenant of good faith and fair dealing in the alleged oral promises.

██  The Supreme Court recently analyzed the scope of a cause of action for tort damages for breach of the covenant of good faith and fair dealing in the context of an action for wrongful discharge. (See *Foley* v. *Interactive Data Corp., supra,* 47 Cal.3d 654.) In *Foley,* the court traced the judicial history of this tort action through a line of decisions upholding the right of insureds to recover tort damages from insurers who unreasonably and in bad faith withheld payment of claims. (*Id.* at p. 684.) Although recognizing the employer/employee relationship is one characterized by special qualities not found in the ordinary commercial context, the court found those characteristics not sufficiently similar to that of insurer and insured to overcome other important social concerns in the light of other remedies available to employees and the necessity of preserving stability in commercial dealings. The court implied, but did not specifically hold, that a special relationship analogous to that between an insurer and insured is an essential ingredient of any fact pattern which could give rise to a tort action for breaching the implied covenant. (*Id.* at p. 692.) While *Foley* may leave this question open, albeit narrowly, it is clear from the court's failure to find sufficiently insurance-like characteristics to justify permitting tort actions against employers who discharge employees in bad faith, that it would not permit such an action in an ordinary commercial context where a lender refuses to honor an oral commitment to extend or "roll over" short-term loans. *Foley,* impliedly if not expressly, limits the ability to recover tort damages in breach of contract situations to those where the respective positions of the contracting parties have the fiduciary characteristics of that relationship between the insurer and insured. (*Id.* at p. 693.)

However, real parties argue that *Foley*'s analysis is not inconsistent with permitting tort damages for a breach of the implied covenant arising from the contractual relationship between them and Mitsui. Without analysis of

which was provided to the Court by Mitsui is wrong. First, page 3 of the internal document of Mitsui which is attached as Exhibit 'A' shows that the $1,350,000.00 was never fully borrowed against. Second, until the time that Mitsui wrongfully called the amortized $300,000.00 note and failed to extend Squidco the balance of the $1,350,000.00 as promised, Squidco could have drawn on both the smaller and larger notes. At that time Squidco was current in paying the smaller note. Third, Mitsui has neglected to credit Squidco with over $165,000.00 in payments made by Squidco on these notes. Fourth, no substantiation or accounting has ever been presented by Mitsui showing that the interest rates charged by Mitsui were correctly charged on the correct amount of principal."

the facts in this case, they generally argue that neither *Foley* nor any other reported decision has specifically denied tort damages for breaches of commercial banking contracts and, second, that this court in *Commercial Cotton Co.* v. *United California Bank* (1985) 163 Cal.App.3d 511 [209 Cal.Rptr. 551, 55 A.L.R.4th 1017], had declared there was an insurance contract type of adhesion in commercial lending relationships. The first argument is a non sequitur because the transaction involved here is the quintessentially ordinary arms-length commercial transaction between two parties of equal bargaining strength, breaches of which are adequately remedied by ordinary contract damages. As to the second argument, real parties incorrectly allude to *Commercial Cotton Co.* as dealing with a borrower/lender relationship when in fact the action was based upon a bank's bad faith imposition of nonexistent legal defenses to avoid reimbursing a depositor for monies it had negligently disbursed.

To the extent that real parties' argument may be characterized as urging a rule that all contractual relationships to which a bank is a party must be of the type justifying tort damages in the event of breach of the implied covenant, we reject it. It is the nature of the contract that is critical, whether it reflects unequal bargaining strength between the parties, an inadequacy of ordinary contract damages or other remedies, adhesiveness of contract provisions adversely impacting the damaged party which are either neutral toward or benefit the other, public concerns that parties to certain types of contracts conduct themselves in a particular manner, the reasonable expectations of the parties or a fiduciary relationship in which the financial dependence or personal security by the damaged party has been entrusted to the other. There are undoubtedly other significant factors and it may be that not all must be present in every case which might give rise to tort damages. Real parties have cited us to no fact of this transaction which takes it out of the ordinary commercial context. However, they argue the terms of its promissory note with Mitsui are "unique." Why the note (actually notes) were so characterized is a mystery for which real parties do not provide a solution. One note for $1,350,000 and another for an additional $350,000 are straightforward. Under the larger, Mitsui agreed to make advances from time to time in the aggregate principal amount of $1,350,000 up to and including October 31, 1984. This short-term note was conditioned to an earlier note in the amount of $300,000 payable in certain installments, the final payment of which was due October 31, 1986. Both notes were secured by continuing guaranties and various security agreements all of which became subject to Mitsui's call upon default of the notes. Both promissory notes were in default when Mitsui filed its complaint.

Nor do we find any commercial "uniqueness" in the alleged oral promises, nor the allegation that Mitsui represented if Squidco placed its banking

accounts with Mitsui and borrowed funds from Mitsui to acquire real property, it would lend short-term funds and renew those loans periodically, (apparently forever) until Squidco was able to secure long-term financing on reasonable terms to substitute for and repay Mitsui. Real parties argue there is some significance to the fact that the transaction occurred because Mitsui was motivated to acquire a new banking customer. However, this motive is not shown to be one uncommon in commercial relationships and certainly not a factor suggesting unfairness or inequality in the loan negotiations which resulted in this contract.

Further, the uncontradicted evidence shows a history of fair dealing. Mitsui made its first short-term loan in April 1983 and it was renewed on several occasions and increased from time-to-time while Squidco continued its attempt to find long-term financing. Various security agreements and guaranties were executed from time-to-time, apparently because the "short-term" financing became more and more extended. In the fall of 1984, Squidco's efforts to obtain long-term financing from a different lender fell through. Squidco's notes came into default and eventually Mitsui refused to continue rolling over the short-term financing, but indicated it would consider extending long-term financing itself if real parties would secure it by a single blanket trust deed covering various real properties. Only when the parties were unable to come to terms did Mitsui sue to recover amounts owed.

The cross-complaint's allegations, even accepted as factually proved, state only an action for simple breach of contract depriving this commercial borrower of the benefits of its bargain. On its primary level, the alleged breach merely requires repayment of monies sooner than contemplated. Should real parties be unable to "cash out" Mitsui, the guarantors and holders of property subject to the security interest will have to honor those agreements, subject to the rights of indemnification from the borrower. Further, it is undisputed that Mitsui did offer long-term financing to Squidco in an amount sufficient for its business purposes but that Squidco elected to not accept it, citing its reluctance to secure the financing by a blanket real property trust deed. That Squidco was able to make this commercial decision shows it and Mitsui were equal bargainers in an ordinary commercial lending posture.

## III

Although real parties argue the holding in *Foley* did not eliminate tort liability for the breach of the covenant of good faith and fair dealing in the commercial contract context of this case, the plain fact is such an action never existed. Even the pre-*Foley* appellate decisions which have applied the

doctrine in the employment context did so by finding the characteristics of an employee/employer relationship were roughly equivalent to those found in the fiduciary relationship between an insured and its insurer. Thus, the court in *Wallis* v. *Superior Court* (1984) 160 Cal.App.3d 1109, 1118 [207 Cal.Rptr. 123], considered whether the parties were in unequal bargaining positions, whether the damaged party entered the contract for a nonprofit motive, whether ordinary contract damages were inadequate, whether one party is especially vulnerable because of the type of harm it may suffer and the adhesive nature of a contract requires the damaged party to place trust in the other to perform, and the other party knew of the vulnerability. None of these or similar factors are present in this case.

As a matter of law, Mitsui has established there is no triable issue of material fact which would permit real parties to prevail on their cross-complaint. ■ An alternative writ or order to show cause would add nothing to the presentation. A peremptory writ is proper. (Code Civ. Proc., § 1088; *United Nuclear Corp.* v. *Superior Court* (1980) 113 Cal.App.3d 359 [169 Cal.Rptr. 827]; *Goodenough* v. *Superior Court* (1971) 18 Cal.App.3d 692, 697 [96 Cal.Rptr. 165].) Let a peremptory writ of mandate issue directing the superior court to vacate its order denying Mitsui's motion for summary judgment on the cross-complaint and to enter a new order granting the motion.

Benke, J., and Froehlich, J., concurred.