PENSION TRUST FUND FOR OPER-
ATING ENGINEERS, Plaintiff–
Appellant–Cross–Appellee,

v.

FEDERAL INSURANCE COMPANY,
Defendant–Appellee–Cross–
Appellant.

Nos. 00–17055, 00–17223.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Jan. 18, 2002.

Filed Oct. 1, 2002.

Edward Mevi, Suzanne Klotz, Stanton, Kay & Watson, San Francisco, CA; and James J. Wesser, John Plotz, Van Bourg, Weinberg, Roger & Rosenfeld, Oakland, CA, for the appellant-cross-appellee.

H. Paul Breslin, Archer Norris, Walnut Creek, CA, for the appellee-cross-appellant.

Before: GOODWIN, SNEED and TROTT, Circuit Judges.

SNEED, Circuit Judge.

This is an action alleging breach of a fiduciary responsibility insurance policy arising out of an insurance company's refusal to defend its insured against a third party claim. The insured, Pension Trust Fund for Operating Engineers ("PTF"), appeals the district court's grant of summary judgment in favor of Federal Insurance Company ("Federal"). PTF asserts that the district court erred in concluding that Federal had no duty to defend PTF against a claim brought by a third party,

Winncrest Homes, Inc. ("Winncrest"), in an underlying action ("the *Winncrest* action"). At issue is whether the *Winncrest* action involves an alleged breach of fiduciary duty that triggers Federal's obligation to defend under California law. Finding such an obligation, we reverse and remand.

## BACKGROUND

### I. Procedural History

PTF is an employee benefit trust that has a fiduciary responsibility insurance policy with Federal. The policy protects PTF in the event that a third party sues PTF for breach of fiduciary responsibilities. As an investment trust, PTF engages in commercial investments for the benefit of its pension participants. One of these transactions led to a lawsuit, in which a third party asserted six common law causes of action. When PTF tendered the complaint to Federal for a defense, Federal refused to defend. PTF then brought a diversity action in California against Federal, seeking declaratory relief and damages for breaches of contract and of the covenant of good faith and fair dealing. Both parties moved for summary judgment on the issue of whether Federal had a duty to defend PTF in this action.

In a succession of interlocutory orders, the district court first rejected Federal's argument that the policy only covered fiduciary duties arising under ERISA. The district court later rejected both parties' subsequent motions for summary adjudication on the related issue of claim notice. It did so because of factual issues regarding: (1) whether PTF complied with the policy's notice provisions; and (2) whether Federal was prejudiced by any late tender of the claim. Despite these preliminary determinations, summary judgment was ultimately granted to Federal because the court found that the *Winncrest* action did not proximately result from a breach of fiduciary duty. The district court deemed this causation conclusion fatal to the duty-to-defend issue. PTF appealed from this summary judgment, and Federal cross-appealed from the court's two earlier adverse determinations.[1]

---

1. Federal does not have standing to maintain its cross-appeal. In the only appealable judgment, the district court found that Federal did not have a duty to defend PTF in the *Winncrest* action. Federal was not the aggrieved party in this judgment. "Ordinarily, only a party aggrieved by a judgment or order of a district court may exercise the statutory right to appeal therefrom. A party who receives all that he has sought generally is not aggrieved by the judgment affording the relief and cannot appeal from it." *Deposit Guar. Nat'l Bank v. Roper*, 445 U.S. 326, 333, 100 S.Ct. 1166, 63 L.Ed.2d 427 (1980), *cited in Envtl. Protection Info. Ctr., Inc. v. Pac. Lumber Co.*, 257 F.3d 1071, 1075 (9th Cir.2001). An exception to this general rule permits the prevailing party to cross-appeal from a summary judgment if "the [collateral] adverse ruling can serve as the basis for collateral estoppel in subsequent litigation." *Ruvalcaba v. City of Los Angeles*, 167 F.3d 514, 520 (9th Cir. 1999). In this case, however, the determinations that Federal seeks to cross appeal will not have collateral estoppel effect in subsequent litigation because they were immaterial to the judgment below. *Envtl. Protection Info. Ctr.*, 257 F.3d at 1076. Moreover, Federal cannot appeal the judgment under *Elec. Fittings Corp. v. Thomas & Betts Co.*, 307 U.S. 241, 59 S.Ct. 860, 83 L.Ed. 1263 (1939) (holding that a party can seek reformation of a favorable decree that discusses issues immaterial to the final outcome). The judgment in favor of Federal dismissed PTF's case with prejudice. It did not establish any rights or liabilities based on the court's earlier determinations regarding notice and the breadth of fiduciary duties covered in the policy. *See Envtl. Protection Info. Ctr.*, 257 F.3d at 1075; *United States v. Good Samaritan Church*, 29 F.3d 487, 488–89 (9th Cir.1994). There is nothing for us to reform in the judgment. Accordingly, we dismiss the cross-appeal and strike Federal's reply brief. Despite Federal's lack of standing to maintain its cross-appeal,

## II. The *Winncrest* Action

In order to determine whether Federal incurred a duty to defend PTF in the *Winncrest* action, it is necessary to understand the complex factual scenario alleged by Winncrest. In this section, we recite the *Winncrest* cross-complaint allegations, upon which the defense duty must be evaluated. *See Horace Mann Ins. Co. v. Barbara B.*, 4 Cal.4th 1076, 1081, 17 Cal. Rptr.2d 210, 846 P.2d 792 (1993).

As a pension trust fund, PTF invested in a real estate venture in Sacramento County called *Rancho Murieta.* It purchased a large tract of land and planned to convert it into a golf country club residential community. PTF formed two corporations to assist in the development: (1) Rancho Murieta Properties, Inc. ("RMPI"), a wholly-owned subsidiary that developed the residential lots; and (2) Rancho Murieta Country Club ("the Club"), a nonprofit corporation that leased and operated the golf courses and clubhouse. PTF controlled the Club's Board of Directors and owed the Club fiduciary duties. Through RMPI, PTF funded the Club's operating losses and executed loans with the Club, secured by deeds of trust. The Club leased the Rancho Murieta property from PTF for the Club's golf courses and country club. Winncrest alleged that in entering into these loan and lease transactions, PTF did not observe the fiduciary duties it owed to the Club. This failure, it claimed, caused the Club to engage in deals that operated to the Club's detriment, which, as reflected in the allegations below, ultimately led to Winncrest's ruin.

PTF eventually sold RMPI to a developer named John B. Anderson ("Anderson") and executed a promissory note with Anderson for this sale. PTF retained a deed of trust as collateral for the loan, encumbering the RMPI properties.

Winncrest then purchased parcels from Anderson's RMPI in several transactions. In the last two transactions, PTF became further entangled in the complex scheme by acting as Winncrest's lender, securing the notes by deeds of trust.

Legal disputes between PTF and Anderson's RMPI over funding of the Club's operations soon arose. Because of these disputes, the State of California declined to renew the country club's permit. Winncrest claimed that PTF unreasonably refused to release the earlier Anderson encumbrance, impeding further sales transactions and ultimately controlling the success of the Club, RMPI, and Winncrest. Conflicts between the Club, Anderson's RMPI, and PTF continued, essentially preventing any further transfer of memberships. Without the ability to offer country club memberships, Winncrest was unable to market its tracts and defaulted on its loans to PTF. As Winncrest's lender, PTF then instituted foreclosure actions against Winncrest.

Winncrest cross-appealed, asserting six causes of action against PTF: Fraud and Deceit, Negligent Misrepresentation, Fraudulent Inducement, Intentional Interference with Prospective Economic Advantage, Developer Liability, and Lender Liability. PTF ultimately prevailed against Winncrest at trial and now seeks reimbursement of its defense costs from Federal, who earlier refused to defend PTF.

## STANDARD OF REVIEW

 We review a grant of summary judgment de novo. *State Farm Mut. Auto. Ins. Co. v. Davis*, 937 F.2d 1415, 1417 (9th Cir.1991). "[V]iewing the evidence in the light most favorable to the nonmoving party," we must determine "whether there are any genuine issues of

however, we will consider the issues raised in the cross-appeal as defenses to PTF's appeal.

material fact and whether the district court correctly applied the law." *Id.* Issues of contract interpretation are also reviewed de novo. *Id.*

## DISCUSSION

### I. The Scope of Federal's Duty to Defend

■■ In California, a liability insurer's duty to defend its insured is broad. It arises whenever a claim may potentially lead to indemnity. *Horace Mann,* 4 Cal.4th at 1081, 17 Cal.Rptr.2d 210, 846 P.2d 792. This duty is necessarily broader than the duty to indemnify because of "the difficulty in determining whether the third party suit falls within the indemnification coverage before the suit is resolved." *Fresno Econ. Import Used Cars, Inc. v. U.S. Fid. & Guar. Co.,* 76 Cal.App.3d 272, 278, 142 Cal.Rptr. 681 (1977).

■ The first step in determining whether the duty to defend is triggered is to compare the allegations of the complaint—and "[f]acts extrinsic to the complaint"—with the policy terms to see if they "reveal a possibility that the claim may be covered by the policy." *Horace Mann,* 4 Cal.4th at 1081, 17 Cal.Rptr.2d 210, 846 P.2d 792. This determination "turns on all facts known by the insurer at the inception of the third party lawsuit." *Barnett v. Fireman's Fund Ins. Co.,* 90 Cal.App.4th 500, 509, 108 Cal.Rptr.2d 657 (2001) (citing *Montrose Chem. Corp. v. Superior Court,* 6 Cal.4th 287, 295, 24 Cal. Rptr.2d 467, 861 P.2d 1153 (1993)). Furthermore, "the insurer must defend an action against its insured even though it has independent knowledge of facts not in the pleadings that establish that the claim is *not* covered." *CNA Cas. of Cal. v. Seaboard Sur. Co.,* 176 Cal.App.3d 598, 606, 222 Cal.Rptr. 276 (1986).

■ Any doubt as to whether these facts trigger a duty to defend is resolved in favor of the insured. *Horace Mann,* 4

Cal.4th at 1081, 17 Cal.Rptr.2d 210, 846 P.2d 792. Furthermore, any limitations of the defense duty must be communicated to the insured in a way that is "conspicuous, plain and clear." *Md. Cas. Co. v. Nationwide Ins. Co.,* 65 Cal.App.4th 21, 30–31, 76 Cal.Rptr.2d 113 (1998) (quoting *Gray v. Zurich Ins. Co.,* 65 Cal.2d 263, 273, 54 Cal.Rptr. 104, 419 P.2d 168 (1966)).

■ In resolving the question of whether a duty to defend arises under a policy, the insurer has a higher burden than the insured. "[T]he insured need only show that the underlying claim *may* fall within policy coverage; the insurer must prove it *cannot.*" *Montrose Chem.,* 6 Cal.4th at 300, 24 Cal.Rptr.2d 467, 861 P.2d 1153. Once the insured makes a showing of potential coverage, the insurer may be relieved of its duty only when the facts alleged in the underlying suit "can by no conceivable theory raise a single issue [that] could bring it within the policy coverage." *Id.* at 300, 24 Cal.Rptr.2d 467, 861 P.2d 1153. The test is not "whether non-covered acts predominate in the third party's action, but rather ... whether there is *any* potential for liability under the policy." *Horace Mann,* 4 Cal.4th at 1084, 17 Cal.Rptr.2d 210, 846 P.2d 792. One limitation on this broad construction is "the nature and kind of risk covered by the policy." *Gray,* 65 Cal.2d at 275, 54 Cal.Rptr. 104, 419 P.2d 168.

### A. Coverage for Non–ERISA Obligations

■ First, we must consider whether the policy is limited to fiduciary duties arising out of ERISA and other pension-related laws or whether, contrary to Federal's position, it also encompassed common law fiduciary duties associated with PTF's commercial transactions. When construing the terms of an insurance policy, we apply the ordinary rules of contract

interpretation. *Md. Cas. Co.*, 65 Cal. App.4th at 28, 76 Cal.Rptr.2d 113. Our task is to discern the mutual intent of the parties at the time the contract was formed. Cal. Civ.Code Ann., § 1636 (West 1985). The best evidence of the parties' intent is the plain language of the policy:

> The "clear and explicit" meaning of these provisions, interpreted in their "ordinary and popular sense," unless "used by the parties in a technical sense or a special meaning is given to them by usage," controls judicial interpretation. Thus, if the meaning a lay person would ascribe to contract language is not ambiguous, we apply that meaning.

*AIU Ins. Co. v. Superior Court*, 51 Cal.3d 807, 822, 274 Cal.Rptr. 820, 799 P.2d 1253 (1990) (citations omitted).

The plain language of the policy mandates coverage for non ERISA breaches of fiduciary duty. The defense provision requires Federal to defend PTF from "any claims first made against the Insured during the Policy Period as a result of any actual or alleged Breach of Fiduciary Duty committed by any Insured." The policy defines **"Breach of Fiduciary Duty"** as:

> the violation of any of the responsibilities, obligations or duties imposed upon fiduciaries by the Employee Retirement Income Security Act of 1974 or amendments thereto or by the common or statutory law of the United States of America or of any state or other jurisdiction therein.

The policy expressly includes fiduciary duties as defined by "common or statutory law." The plain language of this provision creates no ambiguity. Although an ambiguity may be discerned when viewing the provision in the context of the entire policy,[2] any such ambiguity should be construed against the drafter to protect the insured's reasonable expectations. *See Palmer v. Truck Ins. Exchange*, 21 Cal.4th 1109, 90 Cal.Rptr.2d 647, 652–53, 988 P.2d 568 (1999). It was reasonable for PTF to expect that fiduciary duties arising out of its commercial transactions as an investment trust would be covered under the policy.[3] The burden was on Federal to clearly describe any limitations on its broad grant of coverage, and it could have easily drafted the provision to plainly limit coverage to ERISA-type fiduciary responsibilities. This it did not do, and the policy must be read to encompass the obligations arising from PTF's commercial transactions as an investment trust.

**B. Nexus Between Breach of Fiduciary Duty and Harm**

 The next issue we confront is the meaning to ascribe to the policy term that promises a defense against "any claims first made against the Insured during the Policy Period as a result of any actual or alleged breach of fiduciary duty." Federal argues that the phrase "as a result of" requires a narrow causal connection between the alleged breach and the damage that prompts the corresponding claim. The district court relied on two first party property insurance cases, *see Sabella v. Wisler*, 59 Cal.2d 21, 27 Cal.Rptr. 689, 377 P.2d 889 (1963) and *Sauer v. Gen. Ins. Co. of Am.*, 225 Cal.App.2d 275, 37 Cal.Rptr.

---

**2.** The policy was labeled a "Labor Management Trust Fiduciary Policy," a term of art that describes certain fiduciary policies in the pension arena. In addition, the policy application, which helps interpret the policy, *see Bluehawk v. Continental Ins. Co.*, 50 Cal. App.4th 1126, 1131–32, 58 Cal.Rptr.2d 147 (1996), makes extensive inquiry into PTF's trust responsibilities but not its commercial transactions. Federal argues that this context suggests that the policy encompasses only those fiduciary obligations imposed on labor management trust fiduciaries.

**3.** PTF made Federal fully aware of its commercial transactions when it submitted its policy application.

303 (1964), to so hold. For two reasons, we cannot agree.

### 1. *First Party Indemnity Policies vs. Third Party Liability Policies*

Causation terms such as "arising out of" and "as a result of" have often been the subject of first-party insurance disputes, particularly on the issue of whether the damages claimed in a suit fell within either a coverage or an exclusion provision. *See, e.g., State Farm Fire & Cas. Co. v. Salas,* 222 Cal.App.3d 268, 273–78, 271 Cal.Rptr. 642 (1990); *Tierney v. Occidental Life Ins. Co. of Cal.,* 89 Cal.App. 779, 782, 265 P. 400 (1928). In such cases, discerning the primary cause of the harm from among multiple perils is critical. *Garvey v. State Farm Fire & Cas. Co.,* 48 Cal.3d 395, 406–07, 257 Cal.Rptr. 292, 770 P.2d 704 (1989). California law, however, distinguishes between first-party indemnity insurance and third-party liability insurance when applying causation analysis. *Id.* at 405–07, 257 Cal.Rptr. 292, 770 P.2d 704. Reliance on cases construing first-party indemnity insurance policies is thus misplaced when evaluating the defense duty.

 The duty to defend does not usually turn on whether facts supporting a covered claim predominate or generate the claim. *See Horace Mann,* 4 Cal.4th at 1084, 17 Cal.Rptr.2d 210, 846 P.2d 792. Instead, California courts have repeatedly found that remote facts buried within causes of action that may potentially give rise to coverage are sufficient to invoke the

defense duty. *See, e.g., Barnett v. Fireman's Fund Ins. Co.,* 90 Cal.App.4th 500, 108 Cal.Rptr.2d 657 (2001); *CNA Cas. of Cal. v. Seaboard Sur. Co.,* 176 Cal.App.3d 598, 222 Cal.Rptr. 276 (1986). *See also Dobrin v. Allstate Ins. Co.,* 897 F.Supp. 442, 444 (C.D.Cal.1995). Thus, California law does not require that the insured's conduct proximately cause the third party claim in order to trigger the defense duty.

In *CNA,* several insurance companies refused to defend the insured, WSBA, in an antitrust claim because none of the policies covered antitrust actions. In the underlying antitrust action, the third party alleged that WSBA had "[k]nowingly misappropriated ... property interests," had "[i]ntentionally issued [misleading] statements," and had filed "sham counterclaims ... for the purpose of ... maintaining the monopoly position now enjoyed by [WSBA]." 176 Cal.App.3d at 608, 222 Cal. Rptr. 276. The court found that the insurers owed a duty to defend because the allegations were "arguably within [WSBA's] coverage" for piracy, unfair competition, idea misappropriation, libel, slander, and malicious prosecution. *Id.* at 608–09, 222 Cal.Rptr. 276. Although the complaint included these allegations to support an antitrust claim, the allegations nevertheless prompted a duty to defend against piracy, libel, slander, etc.[4]

 Similarly, in *Barnett,* a California appellate court found a duty to defend under an insurance policy covering personal injury. The complaint in the underlying

---

4. The *CNA* court cited approvingly to *Ruder & Finn v. Seaboard Sur.,* 52 N.Y.2d 663, 439 N.Y.S.2d 858, 422 N.E.2d 518 (1981), wherein a New York court determined that an insurance company had a duty to defend its insured against an antitrust action that included an allegation of "false disparagement." *See CNA,* 176 Cal.App.3d at 611–12, 222 Cal.Rptr. 276. The court rejected the insurer's argument that "two solitary, unsubstantiated words" buried within "completely

unrelated federal antitrust cause of action, which was, itself, undisputedly *not* covered" could not trigger the duty to defend. *Id.* at 612, 222 Cal.Rptr. 276. The test for the New York court was whether the claim, "liberally construed, ... [was] within the embrace of the policy." *Id.* at 612 n. 7, 222 Cal.Rptr. 276. The defense duty, it held, is triggered even if an element of a covered action is omitted. *Ruder & Finn,* 52 N.Y.2d at 670, 439 N.Y.S.2d 858, 422 N.E.2d 518.

suit stated causes of action for breach of fiduciary duty, intentional interference with contractual relations, breach of the implied covenant of good faith and fair .dealing, and fraud. 90 Cal.App.4th at 506, 108 Cal.Rptr.2d 657. Nevertheless, the court found a duty to defend because the plaintiffs alleged facts that might give rise to a defamation claim. These allegations were buried within the complaint to show the moral blameworthiness of the defendants, yet they were enough to trigger the duty to defend. As the court noted, "the duty to defend arises when the facts alleged in the underlying complaint give rise to a potentially covered claim regardless of the technical legal cause of action pleaded by the third party." *Id.* at 510, 108 Cal. Rptr.2d 657.

A California federal district court reached a similar result in *Dobrin.* The insured, an attorney, was sued for breach of fiduciary duty by his former partner. He tendered the claim to his insurance company for a defense under a policy covering personal injury even though no personal injury was stated as a specific cause of action. The insurer denied a defense, asserting that the third party complaint did not allege personal injury. The court rejected this argument, finding a duty to defend because the complaint described conduct that could give rise to a claim of slander or libel. 897 F.Supp. 442.

These cases illustrate the loose nexus required for duty-to-defend determinations. Winncrest's claims of breach of fiduciary duty need not predominate the causes of action. Instead, if there is any potential that a claim includes allegations of covered conduct, the insured's defense duty arises.

2. *"As a Result of" and "Arising Out of"*

Even if the defense duty were not subject to such a liberal interpretation, it is doubtful that the California Supreme Court would view "as a result of" significantly differently from "arising out of." California courts have repeatedly construed the two phrases to require only a slight causal connection. *See, e.g., State Farm,* 937 F.2d 1415, 1419 (9th Cir.1991) (finding that "resulting from" should be interpreted similarly to "arising out of" to require some "slight causal connection" under California law); *Am. Nat'l Property and Cas. Co. v. Julie R.,* 76 Cal.App.4th 134, 138, 146, n. 1, 90 Cal.Rptr.2d 119 (1999) (interpreting "result from" the same as "arising out of" to require only "some minimal causal connection"); *Shell Oil Co. v. Winterthur Swiss Ins. Co.,* 12 Cal. App.4th 715, 753, 15 Cal.Rptr.2d 815 (1993) (concluding that language excluding property damage "arising out of" pollutants "created a broad exclusion from coverage for any liability resulting from pollution"); *Continental Cas. Co. v. City of Richmond,* 763 F.2d 1076, 1080 (9th Cir.1985) (" 'Arising out of' are words of much broader significance than 'caused by.' They are ordinarily understood to mean 'originating from,' 'having its origin in,' 'growing out of' or 'flowing from' or in short, 'incident to, or having a connection with' ").

The insurance policy between PTF and Federal offers no alternative definition for "as a result of." Webster's dictionary defines "result" as "to proceed or arise as a consequence, effect, or conclusion." It similarly defines "arise" as "to result, issue, or proceed." We are not persuaded by Federal's hair-splitting efforts, especially given the broadness of the duty to defend. As one court stated:

> While it is conceivable an insurance expert would find this distinction [between "arising out of" and "held liable for"] to be significant for purposes of determining the existence of a defense duty, there is nothing in the use of the "held liable" phrase that would meaningfully

communicate this distinction to a layperson. An insurance policy should be read as a layperson would read it and not as it might be analyzed by an attorney or an insurance expert.

*Md. Cas.*, 65 Cal.App.4th at 32, 76 Cal. Rptr.2d 113 (citations and internal quotations omitted). To repeat, Federal must communicate limitations of the defense duty in a manner that is "conspicuous, plain and clear." *Md. Cas. Co.*, 65 Cal. App.4th at 30–31, 76 Cal.Rptr.2d 113. "As a result of" should not be read more narrowly than "arising out of" to destroy the insured's reasonable expectation of coverage.

Having determined the required connection between the claim and the insured's conduct, as well as the scope of fiduciary responsibilities covered, we now turn to the issue of whether the claims at issue fall within these boundaries. We hold that they do.

## C. Breaches of Fiduciary Duties Included in the Winncrest Claims

■ If any one of Winncrest's claims against PTF is potentially covered by the policy, then Federal must defend PTF against the entire suit (absent the insurer's "undeniable evidence supporting an allocation of a specific portion of the defense costs to a noncovered claim."). *See Horace Mann*, 4 Cal.4th at 1084, 17 Cal. Rptr.2d 210, 846 P.2d 792. PTF claims that Winncrest's complaint alleges a breach of fiduciary duty in three ways: (1) breach of fiduciary duty to the Club, resulting in harm to Winncrest; (2) breach of fiduciary duty to Winncrest, implied in the lender liability claim; and (3) breach of fiduciary duty to Winncrest, implied in the developer liability claim. Federal's duty to defend arises under each of these claims.

### 1. *Breach of Fiduciary Duties Owed to Club*

Underlying all of Winncrest's causes of action are factual assertions expressly alleging that PTF breached a fiduciary duty it owed to the Club, which, in turn, had the "proximate result" of causing Winncrest's damages. For example, one such alleged fiduciary violation is that PTF (through its control of the Club's Board of Directors) forced the Club to enter loan transactions with RMPI that disadvantaged the Club. These types of violations caused the Club to become inoperable. Without an operable club, Winncrest could not market its residential lots on the golf course.

The language of the insurance policy is broad, and the onus was on the drafter of the policy to convey any limitations. If Federal desired to limit coverage to claims brought only by fiduciary beneficiaries, it could have expressly done so. Instead, it used broader language, covering all claims made "as a result of any actual or alleged Breach of Fiduciary Duty committed by any Insured." The policy's plain language indicates that a fiduciary violation—even when asserted by a non-beneficiary—is covered. Once again, Federal failed to communicate an asserted limitation conspicuously, plainly and clearly.

### 2. *Developer and Lender Liability Claims*

Federal's defense duty also arises under Winncrest's claims of Developer and Lender Liability. Our task is not to determine whether the facts give rise to a finding of lender or developer liability involving a breach of fiduciary duty. Instead, if the facts alleged in support of these claims present nothing more than "a bare 'potential' or 'possibility' of coverage," the defense duty is triggered. *Montrose*, 6 Cal.4th at 300, 24 Cal.Rptr.2d 467, 861 P.2d 1153. Because we find such a poten-

tial—however small—Federal is obligated to defend PTF.

In *CNA,* one of the insurance companies argued that no duty to defend could arise under a policy covering malicious prosecution because malicious prosecution causes of action require a "prior termination of the earlier proceeding in favor of the party alleging malicious prosecution." Such termination was absent in the underlying action. 176 Cal.App.3d at 609 n. 4, 222 Cal.Rptr. 276. However, the court found the insurer's argument unpersuasive, stating:

> when presented with a tender of a defense, it is not insurer's place to analyze and evaluate the underlying claim of liability in order to reject the defense of any claim that is not meritorious.... The fact that [the insurer] may have known of a 'good defense, even an ironclad one, ... did not relieve it of its obligation to defend its insured.

*Id.* Similarly, in this case, the fact that PTF may have valid defenses to assert against Winncrest does not relieve Federal of the responsibility to defend its insured.

### a. Developer Liability

Winncrest asserts a cause of action against PTF entitled "Developer Liability." In it, Winncrest claims that PTF owed a duty as a developer "to protect existing lot purchasers and all subsequent lot purchasers" against mismanagement and undercapitalization of the Club. At trial, Winncrest argued that PTF owed special developer duties pursuant to *Raven's Cove Townhomes, Inc. v. Knuppe Dev. Co.,* 114 Cal.App.3d 783, 171 Cal. Rptr. 334 (1981). Under this theory, a developer becomes a fiduciary to later homeowners through the homeowners' memberships in a homeowners' associa-

tion. *Id.* This pattern arguably did not exist in the PTF/Winncrest relationship.[5] Federal was obligated, however, to defend PTF and to assert its defenses against Winncrest—not against PTF. That the potential for fiduciary liability existed is made obvious by examining Winncrest's assertions in litigation. In a post-trial motion, Winncrest claimed that it had "sufficiently alleged a cause of action for breach of fiduciary duty under the umbrella of ... Developer Liability as set forth in *Raven's Cove.*" Federal cannot escape its duty to defend PTF on the claims of Developer Liability by arguing that Winncrest is not a country club member.

### b. Lender Liability

Winncrest also alleges that PTF is at fault for lender liability. Although no express allegation of breach of fiduciary duty is included in the *Winncrest* complaint under the cause of action for lender liability, Winncrest does allege facts, which, if taken as true, may support a finding of breach of fiduciary duty.

■■■ First, Winncrest claims that PTF breached lender duties by failing to disclose material facts about the project's financial affairs to Winncrest. The lenderborrower relationship, however, is normally an arms-length transaction involving no special duty to disclose. Thus, liability for nondisclosure generally arises only when the lender is in a fiduciary position of trust and not simply a mere lender:

> The general rule for liability for nondisclosure is that even if material facts are known to one party and not the other, failure to disclose those facts is not actionable fraud *unless there is some fiduciary or confidential relationship* giving rise to a duty to disclose.

---

5. *Raven's Cove* duties run to the homeowners' association and its members. Winncrest is not a country club member. However,

Winncrest alleged that it was promised country club membership rights in each of the three sales transactions.

*Kovich v. Paseo Del Mar Homeowners' Ass'n,* 41 Cal.App.4th 863, 866, 48 Cal. Rptr.2d 758 (1996).

▇▇▇ Second, Winncrest alleges that PTF, as a lender, acted "in extreme bad faith." Generally, no cause of action for the tortious breach of the implied covenant of good faith and fair dealing can arise unless the parties are in a "special relationship" with "fiduciary characteristics." *Mitsui Mfrs. Bank v. Superior Court,* 212 Cal.App.3d 726, 730, 260 Cal.Rptr. 793 (1989) (relying on *Foley v. Interactive Data Corp.,* 47 Cal.3d 654, 692–93, 254 Cal.Rptr. 211, 765 P.2d 373 (1988)). Thus, the implied covenant tort is not available to parties of an ordinary commercial transaction where the parties deal at arms' length. *Mitsui,* 212 Cal.App.3d at 733, 260 Cal.Rptr. 793. A central test of whether a lender is subject to this tort is whether there is "a fiduciary relationship in which the financial dependence or personal security by the damaged party has been entrusted to the other." *Id.* at 731, 260 Cal.Rptr. 793.

▇▇▇ Third, a lender, such as PTF, owes a fiduciary duty to a borrower when it excessively controls or dominates the borrower. *Credit Managers Ass'n v. Superior Court,* 51 Cal.App.3d 352, 359–61, 124 Cal.Rptr. 242 (1975). *See also Okura & Co. (Am.), Inc. v. Careau Group,* 783 F.Supp. 482, 494 (C.D.Cal.1991). Winncrest asserts that RMPI owed Winncrest country club memberships, potentially making Winncrest a creditor of RMPI. Even if PTF did not directly control Winncrest to the extent necessary for a finding that it was a fiduciary control lender, the facts do support the possibility that PTF controlled RMPI in a manner that makes PTF liable to RMPI and RMPI's creditors for a breach of fiduciary duty. *See Credit Managers,* 51 Cal.App.3d at 360, 124 Cal.Rptr. 242 (stating that a control lender's fiduciary obligation also extends to the stockholders and creditors of borrower).

These facts raise the possibility that PTF may be found liable as a lender for breaching fiduciary duties. The trial court's refusal to grant PTF's motion for summary judgment against Winncrest underscores the unreasonableness of Federal's claim that there was absolutely no possibility for liability. The court noted, that "[t]here are triable issues with respect to the conduct of PTF which could create a fiduciary relationship and whether it was more than a mere lender." Because the mere possibility of coverage is enough to trigger the defense duty and Federal cannot show the complete and absolute absence of such possibility, it should be required to defend PTF.

## II. The Notice Provision

▇▇▇ Federal next contends that even if its defense obligation requires it to defend PTF in the Winncrest action, this obligation was nonetheless relieved by PTF's allegedly late tender of the Winncrest claim. When analyzing an insurer's defense of improper notice, California law distinguishes between: (1) *occurrence* policies, in which coverage is triggered by events that occur within the policy period, even if they lead to claims years after the policy period; and (2) *claims-made* policies, in which coverage is determined by claims made within the policy period, regardless of when the events that caused the claim to materialize first occurred. *Burns v. Int'l Ins. Co.,* 929 F.2d 1422, 1424 n. 3 (9th Cir.1991). Claims-made policies can be further classified as either *claims-made-and-reported* policies, which require that claims be reported within the policy period, or general claims-made policies, which contain no such reporting requirement. *See Xebec Dev. Partners, Ltd. v. Nat'l Union Fire Ins. Co. of Pittsburgh,*

*Pa.*, 12 Cal.App.4th 501, 532–33, 15 Cal. Rptr.2d 726 (1993). *See also Pac. Employers Ins. Co. v. Superior Court,* 221 Cal.App.3d 1348, 1358, 270 Cal.Rptr. 779 (1990) ("Critically, however, claims-made policies require that notice be given *during the policy period* itself. . . . Claims-made . . . policies are essentially *reporting* policies."); *Textron, Inc. v. Liberty Mut. Ins. Co.,* 639 A.2d 1358, 1364 (R.I.1994). The Federal policy was a claims-made policy with no reporting requirement. The policy language required that PTF provide notice of claims "as soon as practicable." It did not require that the claims be reported within the policy period, or even within a specific number of days thereafter.[6] Federal's policy cannot be treated as a claims-made-and-reported policy.

Having determined the type of policy PTF had with Federal, we now must determine whether California's notice prejudice rule applies. In California, the notice-prejudice rule governs occurrence policies but not general claims-made policies. *See Burns,* 929 F.2d at 1424.

Although the California Supreme Court has not addressed whether the notice-prejudice rule applies to a claims-made policy with no reporting requirement, a California appellate court has found the notice-prejudice appropriate in such a policy. *See Xebec,* 12 Cal.App.4th at 532–33, 15 Cal.Rptr.2d 726. *See also Am. Inst. of Architects v. Interstate Fire & Cas. Co.,* 986 F.2d 1455, 1457–59 (D.C.Cir.1993) (same under Illinois law); *Reliance Ins. Co. v. St. Paul Ins. Cos.,* 307 Minn. 338, 239 N.W.2d 922, 925 (1976) (same under Minnesota law).

In *Xebec,* the insurance policy contained almost identical language to the current policy. The court and the parties presumed that the insurer's failure to give sufficient notice was not ipso facto a valid reason to refuse to defend. *Xebec,* 12 Cal. App.4th at 532, 15 Cal.Rptr.2d 726. The court applied the notice prejudice rule, stating that "[i]n the circumstances of this case [the insurer] had the burden of showing it was *substantially prejudiced* by the insureds' breaches." *Id.* at 532–33, 15 Cal. Rptr.2d 726. The court distinguished the policy from claims-made-and-reported policies in which notice is "an element of coverage." *Id.*

It is reasonable to conclude that a claims-made-and-reported policy differs from a general claims-made policy containing no requirement that the claim be reported within the policy period. We hold that this is a reasonable interpretation of California law. The reporting requirement serves two different purposes in the two policies. The notice provision in a general claims made policy, as in an occurrence policy, often requires notice "as soon as practicable." This serves to "facilitate the timely investigation of claims by bringing an event to the attention of the insurer and allows an inquiry 'before the scent of factual investigation grows cold.'" *Textron,* 639 A.2d at 1364 (quoting *Dalzell v. Northwestern Mut. Ins. Co.,* 218 Cal. App.2d 96, 103, 32 Cal.Rptr. 125 (1963)). In contrast, in a claims-made-and-reported

---

**6.** The pertinent policy language specifically provides as follows:

This is a claims-made policy. Except to the extent as may otherwise be provided herein, this policy covers claims first brought against the Insured during the Claim Period. [Introductory language].

[T]he Company shall pay on behalf of the Insured . . . on the account of any claims first made against the Insured during the Policy Period [Insuring Clause 1].

The Insured shall, as a condition precedent to its right to be indemnified under this policy, give the Company notice as soon as practicable in writing of any claim made against it" [Notice of Claim provision].

policy, notice is the event that actually triggers coverage. Because PTF's policy did not contain a reporting requirement, the notice prejudice rule applies. Under this rule, a factfinder on remand should determine (1) whether PTF's notice was late; and (2) if so, whether Federal was prejudiced by the delay in notice. *See Joyce v. United Ins. Co. of Am.*, 202 Cal. App.2d 654, 662, 21 Cal.Rptr. 361 (1962) ("Where a policy of insurance provides for the giving of notice of a claim "as soon as practicable," ... failure to give, or delay in giving, the required notice is not fatal to recovery under the policy, unless the insurer has been prejudiced by such failure or delay.").

## CONCLUSION

The Winncrest claims involved several allegations of a breach of fiduciary duty that required Federal's defense. We reverse the district court's summary judgment in favor of Federal and remand for further proceedings consistent with this opinion.

**REVERSED** and **REMANDED.**