**TIME WARNER ENTERTAINMENT, CO., L.P., a Delaware limited partnership dba Warner Bros., Plaintiff—Appellee,**

v.

**CONTINENTAL CASUALTY COMPANY, an Illinois Corporation, Defendant—Appellant.**

No. 02–56221.

D.C. No. CV–01–10235–SVW.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted June 5, 2003.

Decided July 30, 2003.

Before REINHARDT, O'SCANNLAIN, and FISHER, Circuit Judges.

MEMORANDUM *

Continental Casualty Co. ("Continental") appeals from the district court's grant of summary judgment to Time Warner Entertainment Co. ("Time Warner") on its duty to defend claim. Because the relevant facts are known to the parties they are not repeated here.

---

* This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as may be provided by Ninth Circuit Rule 36–3.

1. As an initial matter, notwithstanding the merits of Time Warner's claim, Continental claims that it is barred by the twelve month limitations period contained in the Policy.

**I**

At the outset, we note that the scope of the duty to defend is broad under California law. "An insurer ... bears a duty to defend its insured whenever it ascertains facts which give rise to the potential of liability under the policy." *Gray v. Zurich Ins. Co.*, 65 Cal.2d 263, 276–77, 54 Cal. Rptr. 104, 419 P.2d 168 (1966); *see also Horace Mann Ins. Co. v. Barbara B.*, 4 Cal.4th 1076, 1081, 17 Cal.Rptr.2d 210, 846 P.2d 792 (1993) ("It is by now a familiar principle that a liability insurer owes a broad duty to defend its insured against claims that create a potential for indemnity."); *CNA Cas. of Cal. v. Seaboard Surety Co.*, 176 Cal.App.3d 598, 605, 222 Cal.Rptr. 276 (1986) ("An insurer's duty to defend must be analyzed and determined on the basis of any *potential* liability arising from facts available ... to it at the time of the tender of defense.") (emphasis in original).

Indeed, "[i]n resolving the question of whether a duty to defend arises under a policy, the insurer has a higher burden than the insured. The insured need only show that the underlying claim *may* fall within policy coverage; the insurer must prove it *cannot.*" *Pension Trust Fund for Operating Eng'rs v. Fed. Ins. Co.*, 307 F.3d 944, 949 (9th Cir.2002) (citation and internal quotation marks omitted) (emphasis in original).

**II**

With this background in mind, we turn to Continental's first contention on appeal:[1]

But in *Lambert v. Commonwealth Land Title Insurance, Co.*, 53 Cal.3d 1072, 282 Cal.Rptr. 445, 811 P.2d 737 (1991), the California Supreme Court found that a statutory limitations period was equitably tolled until resolution of the underlying claim. To hold otherwise could

  allow expiration of the statute of limitations on a lawsuit to vindicate the duty to defend

that Time Warner's dealings with acclaimed director Francis Ford Coppola do not fall within the Entertainment Risk Insurance Policy's (the "Policy's") coverage for "[i]nfringement of statutory or common law copyright, plagiarism, piracy, or misappropriation of other similar property right," and for piracy or misappropriation of names, trade names, characters, plots, or other similar property right. Continental argues that piracy and misappropriation reference the taking of rights to creative material, and that there were no such allegations set forth in the Coppola complaint.

But in *CNA Casualty*, the underlying antitrust suit contained allegations that the insured "[k]nowingly misappropriated, stole and misused property interests" and "[m]ade intentional misrepresentations of fact to plaintiffs in an effort to further eliminate the competition of plaintiffs." 176 Cal.App.3d at 608 n.3, 222 Cal.Rptr. 276. The court found "[t]hese charges [were] arguably within Seaboard's coverage for piracy, unfair competition and idea misappropriation, particularly since these terms [were] undefined in Seaboard's policy." *Id.* at 608, 222 Cal.Rptr. 276.

■ In *National Union Fire Insurance Co. v. Siliconix Inc.*, 729 F.Supp. 77 (N.D.Cal.1989), the court found that "piracy" was susceptible to many definitions and that "it may be interpreted to include such offenses as publication of trade secrets, interference with prospective economic advantage, or trademark infringement." *Id.* at 80. On the basis of such case law, we conclude that Time Warner made a plausible claim that its conduct fell within the enumerated offenses of piracy and misappropriation covered by the Policy, thereby invoking Continental's duty to defend under California law.

## III

Continental next contends that denial of coverage was appropriate because Section I.A. of the Policy (the relevant provision here) provides that the insurance company must defend against "any Claim seeking damages, injunctive or declaratory relief ... arising out of [certain enumerated offenses] ... committed in the utterance or dissemination of Matter by the Insured in the Business of the Insured." Continental points to the fact that "Matter" is defined in the Policy as "printed, audio, visual, or informational works uttered or disseminated in any medium of expression to a mass audience in the Business of the Insured." Because Time Warner's alleged misrepresentations were made only to executives at

even before the duty itself expires. This grim result is untenable. The insured must be allowed the option of waiting until the duty to defend has expired before filing suit to vindicate that duty. Allowing this option is equitable.
*Id.* at 1077–78, 282 Cal.Rptr. 445, 811 P.2d 737. In adopting this rule, the court "recognize[d] the justice and fairness of equitably tolling the insured's action to establish coverage until resolution of the underlying claim." *Id.* at 1081, 282 Cal.Rptr. 445, 811 P.2d 737.

It is true that *Lambert* involved equitable tolling for a statutory limitation period, and the case at hand involves a privately-negotiated contractual limitation. But the California Supreme Court in *Lambert* expressed a strong public interest in tolling the limitations period to allow the insured to defend against the underlying substantive claim without having simultaneously to prosecute a collateral action against the insurer. Likewise, it appears here that California law may require tolling of the time that the Coppola suit was pending. In any event, even if California law would not require as such, the Policy failed to state clearly that it intended to deviate from the tolling principle announced in *Lambert*. Because California has recognized a strong public interest in tolling, and because the Policy does not explicitly provide otherwise, we conclude that Time Warner's suit against Continental was timely commenced.

Columbia and to Coppola before actual production of the proposed "Pinocchio" movie, and thus had nothing to do with dissemination of an artistic work to a mass audience, Continental argues that the Policy does not give rise to a duty to defend for Time Warner's conduct.

But Continental's narrow reading of the Policy overlooks the fact that a covered "Claim" is defined as "the first receipt by the Insured of a demand for money or services, made by a person or entity from the Insured or from an Indemnified Party, *arising out of the dissemination of Matter or the investigation, gathering or acquisition of Matter by the Insured* or by an Indemnified Party." (emphasis added). It would appear that this contractual language provides coverage to Time Warner for the pre-production activity of acquiring and defending its property interest in a creative work.

Nevertheless, Continental counters that the Policy should not be read so broadly in light of the contractual language in Section I.B. There, the Policy provides coverage against "any Claim seeking damages, injunctive or declarative relief ... arising out of [certain enumerated offenses] ... committed in the gathering, investigation, or acquisition of information ... for the purpose of inclusion in books, magazines, or News Programming...." Continental points to the absence of any similar language concerning the "gathering, investigation, or acquisition of information" in

Section I.A. as to why that provision should be construed more narrowly.

■ But Continental's argument fails because the absence of language similar to that of Section I.B.—a section that concerns Time Warner's publishing and cable businesses and specifically provides coverage for the act of acquiring and gathering "information" for a story—is of no consequence. Section I.A., unlike Section I.B., already has embedded within it provisions for the gathering, investigation, or acquisition of Matter. In addition to the definition of "Claim," which includes "arising out of the investigation, gathering or acquisition of Matter," Section I.A. specifically encompasses the "Business of the Insured," which is defined to include "creation, acquisition, pre-production ... of motion pictures or programs, commercial film ... script stories ... (published or unpublished)." Accordingly we reject Continental's argument.

Looking at the policy as a whole  including Section I.C. which provides relief for an "election by the Insured to cease or forego the dissemination of Matter" (undermining Continental's argument that coverage only attaches after a creative work has been released to a consuming audience)—we conclude that the acquisition and creation of material for a motion picture is within the scope of the Policy's coverage.[2] Accordingly, Continental had a duty to defend Time Warner in the underlying Coppola litigation.[3]

AFFIRMED.

**2.** At best for Continental the relevant provisions of the Policy lack a certain degree of clarity but such ambiguities are resolved against the insurer and in favor of coverage. *See Reserve Ins. Co. v. Pisciotta*, 30 Cal.3d 800, 807–08, 180 Cal.Rptr. 628, 640 P.2d 764 (1982).

**3.** Even if the Policy does provide coverage, Continental contends that relevant exclusions are applicable. Continental first cites to ex-

clusion A which prohibits coverage for any claim "arising out of a breach of contract or failure by the Insured ... to perform any contract." But the Coppola complaint specifically alleged that there never was any binding agreement between the producer and Time Warner. Moreover, Coppola brought claims for slander of title and interference with prospective economic advantage which gave rise to potential liability not subject to

REINHARDT, Circuit Judge, dissenting.

In my view, the insurance policy cannot reasonably be read to provide coverage for the claims made by Francis Ford Coppola and his co-plaintiffs in *Coppola v. Warner Bros., Inc.*, because those claims did not "aris[e] out of" any act "committed in the utterance or dissemination of Matter" under the meaning of paragraph I.A of the policy. There is simply no potential for liability here. Thus, no matter how broad the duty to defend may be under California law, there is no such duty here. I therefore respectfully dissent.

The policy obligates Continental to defend Time Warner against, and indemnify Time Warner for, liability resulting from only two types of claims. Those types of claims relate to two specific aspects of Time Warner's business. Paragraph I.A, on which Time Warner bases its claim, covers the first type: claims arising from unlawful acts that Time Warner may commit in disseminating artistic or informational material to a mass audience. The contract explicitly limits coverage under I.A to claims based on unlawful acts "committed in the utterance or dissemination of Matter by the Insured [i.e., Time Warner] in the Business of the Insured." In section IV, "Definitions," the word "Matter" is defined as "printed audio, visual or informational works uttered or disseminated in any medium of expression *to a mass audience* in the Business of the Insured." ¶ IV.M (emphasis added). The plain language of these provisions is confirmed by the fact that the unlawful acts listed in I.A are precisely those that one might expect to create liability for a company engaged in disseminating artistic material: the common law privacy torts, torts of defamation, unauthorized use of intellectual property, and the like. ¶ I.A.1–6.

Paragraph I.B covers the second type of claims: claims arising from acts committed in the "gathering, investigation, or acquisition of information ... for the purpose of including in books, magazines, or News Programming ... in the Publishing and Cable Businesses of the Insured." The unlawful acts listed in this paragraph—many fewer than in I.A—are those that a large news organization might commit in gathering information: trespass and related torts, as well as "breach of an agreement not to reveal the identity of a news source." ¶ I.B.1–2.

The claims of the *Coppola* plaintiffs are of neither type. Rather, they arose from Time Warner's effort to enforce an alleged agreement between Time Warner and Coppola concerning the development of a movie. The *Coppola* plaintiffs assert that Time Warner's letter to executives of Columbia Studios informing them that Coppola was not free to perform services in connection with Columbia's project was wrongful. Time Warner recognizes that these claims do not fall within paragraph I.B, as they do not involve information to be included in "books, magazines, or News Programming" and do not concern Time Warner's publishing or cable business. However, contrary to the argument of

this exclusion. Accordingly, exclusion A cannot excuse Continental from its duty to defend. *See Horace Mann*, 4 Cal.4th at 1081, 17 Cal.Rptr.2d 210, 846 P.2d 792 (insurer must defend entire action if lawsuit raises at least one potentially covered claim). Continental also points to exclusions C and I which prohibit coverage for suits brought by past or present employees arising out of the subject matter of the employment relationship. As pled by Coppola, he never was an employee of Time Warner. In addition, Coppola's suit against Time Warner concerned the company's interference with his dealings with Columbia, not merely the subject matter of his employment relationship with Time Warner. Accordingly, none of the exclusions to coverage apply.

Time Warner and the holding of the majority, the claims are not covered by I.A either, because the unlawful acts alleged by the *Coppola* plaintiffs were not "committed in the utterance or dissemination of Matter" to a mass audience. The claims at issue in this case are of a type for which Time Warner chose not to purchase insurance, at least not in this policy. The matter should end there. There is no coverage.

Time Warner, however, has persuaded the majority to overlook both the plain meaning of the policy language and the clear intent of the parties to limit coverage under I.A to liability arising out of the dissemination of creative material to a mass audience. The majority's misinterpretation rests upon reading "to a mass audience" out of the contract. This is accomplished by finding a supposed contradiction with this requirement in the definition of "Claim" in paragraph IV.C, a definition that applies to both I.A and to I.B. As the majority notes, "Claim[s]" include demands for money or services arising out of either the "dissemination of Matter" or "the investigation, gathering or acquisition of matter." Essentially, the majority's argument is that, because a claim can arise from acts committed in the acquisition of Matter, and paragraph I.A covers "claims," paragraph I.A covers claims arising from acts committed in the acquisition of Matter.

This argument makes no sense. Paragraph I.A plainly covers only a subset of claims, not every claim that could fit within the meaning of the word "claim" as defined in the contract's list of definitions. A claim may, indeed, arise from an act committed in the acquisition of Matter, and where such acts arise in Time Warner's publishing and cable businesses, there may be coverage under paragraph I.B. Paragraph I.A, however, is clear that not all claims are covered under that paragraph, only those arising from acts "committed in the dissemination of Matter," which means "to a mass audience." That some claims may arise from acts committed in the acquisition of Matter does not imply that every provision providing coverage for claims provides coverage for claims arising from acts committed in the acquisition of Matter.[1]

The majority applies the same erroneous reasoning in relying on the definition of the term "Business of the Insured" in section IV. That term, like "Claim," includes some matters for which there is coverage only under paragraph I.A, and others for which coverage exists only under paragraph I.B. In such circumstance, I fail to see why the definition leads the majority to believe that paragraph I.A must be extended to cover all occurrences within the entire policy. If paragraph I.A provided coverage for every "Claim" arising in the "Business of the Insured," the paragraph would simply state that the Compa-

1. As a demonstration of the majority's logic, imagine a contract in which Insurance Co. insures Mr. X's cars against theft. The contract contains a paragraph of definitions, which defines "car" as "any two-door or four-door car owned by Mr. X." The contract also contains two provisions setting forth terms of coverage. Paragraph I states that "Two-door cars are insured against any theft that occurs during daylight hours." Paragraph II states that "Four-door cars are insured against any theft that occurs at any hour of the day."

One of Mr. X's two-door cars is stolen at night. Most readers of the contract would say that Mr. X is out of luck. Under the majority's theory, however, the theft is covered–under paragraph II–because, even though paragraph II seems to cover only four-door cars, the contractual definition of "car" conflicts with that interpretation: A "Car" can be a two-door or a four-door cars. Ambiguities are settled in favor of broader coverage, so the Mr. X wins.

ny agrees to defend against liability "for any Claim arising in the Business of the Insured." Instead, however, the paragraph includes almost a full page of qualifying language, specifying particular claims that are covered under I.A and expressly limiting coverage under that paragraph to claims *"arising in the utterance or dissemination of Matter by the Insured* in the Business of the Insured." (Emphasis added.) The language in the definitions section simply cannot be read to extend coverage under paragraph I.A to all matters pertaining to the Business of the Insured.

In short, Time Warner's argument that I.A. provides coverage for claims arising from the acquisition of Matter, as well as from the dissemination of Matter to a mass audience, is without basis in the policy.

