[No. B071865. Second Dist., Div. Three. Dec. 19, 1994.]

SUZANNE CARLTON, Plaintiff and Appellant, v.
ST. PAUL MERCURY INSURANCE COMPANY, Defendant and
Respondent

## COUNSEL

Ruben, Crispi & McGonigle, Timothy D. McGonigle and W. Ruel Walker for Plaintiff and Appellant.

Robins, Kaplan, Miller & Ciresi, Scott G. Johnson and Sheryl A. Weinstein for Defendant and Respondent.

## OPINION

**KLEIN, P. J.**—Appellant Suzanne Carlton, successor in interest to plaintiff Mark A. Carlton, deceased (Carlton), appeals a judgment following a grant of summary judgment in favor of defendant and respondent St. Paul Mercury Insurance Company (St. Paul or the insurer) in a bad faith action alleging unreasonable delay in paying a claim.

The essential issue presented is whether the trial court properly held the insurer's handling of the claim was reasonable as a matter of law.

We conclude the evidence compels the conclusion the insurer's conduct was reasonable, considering the totality of the circumstances. The judgment therefore is affirmed.

### FACTUAL AND PROCEDURAL BACKGROUND

Carlton owned a 1966 Citroen automobile that was insured under an antique automobile insurance policy (the policy) issued by St. Paul. For an annual premium of $138 the policy insured the vehicle for loss or damage up to the policy limit of $8,000. The car was a gift from Carlton's father, Jack A. Carlton (the father). The father arranged for insurance with Shefflin-Mead Insurance Services, Inc., which later became Dukar Insurance Broker (Dukar).

In March 1988, Carlton was involved in a one-car accident in his Citroen. Challenger Motors (Challenger), near Carlton's home, performed certain repairs to make the car driveable. On or about July 7, 1988, the father requested a proof of loss form from Carlton's broker, Dukar.

On July 22, 1988, Dukar forwarded the form to the father.

On September 10, 1988, after a two-month trip abroad, the father returned the form to Dukar. The form set forth a damage estimate of $2,500.

On October 14, 1988, St. Paul received the completed notice of loss form. On October 25, 1988, Charlie Rizzo (Rizzo) of the Damage Evaluation Bureau (Bureau) inspected the car.

On November 17, 1988, St. Paul received a call from the Bureau which indicated Challenger was having trouble obtaining parts for the car.

On December 28, 1988, St. Paul telephoned Rizzo for an update and was advised it was very difficult to obtain parts for Carlton's antique Citroen, and an estimate could not be prepared without the cost of the parts.

On February 7, 1989, after parts were located, Rizzo prepared a written estimate appraising the damages at $4,273.38.

On February 17, 1989, St. Paul issued a check to Carlton for $4,059.71 based on the Bureau report. The amount of the check represented the amount of Rizzo's estimate less the 5 percent deductible.

On February 22, 1989, St. Paul's adjuster, Teresa Klein Donovan (Donovan), directed that Carlton's file be closed.

On April 28, 1989, Carlton wrote to St. Paul indicating the amount of the check would not cover the cost of repairs. Donovan reopened its file to investigate a possible supplemental payment. She contacted Challenger on or about May 22, 1989, regarding additional damages.

On July 10, 1989, Donovan wrote to Carlton advising him Challenger had not yet submitted the required paperwork for a supplemental payment and she directed Carlton to contact Challenger to urge its cooperation.

On September 8, 1989, Carlton wrote to Donovan stating he had received a verbal estimate from SM World of approximately $10,000 to repair the car.

On September 13, 1989, Carlton obtained a written estimate from SM World providing a range from $8,750 to $13,475 to repair the car.

On September 14, 1989, Carlton transmitted said estimate to St. Paul.

On September 25, 1989, based on the SM World estimate, Donovan wrote to Carlton indicating St. Paul would reinspect the car.

On December 15, 1989, Carlton sent St. Paul an estimate from Best of the West Body & Paint (Best of the West), the repair shop specified by St. Paul, for the amount of $9,073.45.

On December 21, 1989, St. Paul issued Carlton a check for $3,940.29, representing the balance of Carlton's $8,000 policy limits.

On October 18, 1991, Carlton sued St. Paul for breach of contract and bad faith.

St. Paul answered, essentially denying the allegations and pleading various affirmative defenses.

On June 3, 1992, St. Paul filed a motion for summary judgment. St. Paul argued Carlton's claim for breach of contract had no merit because the complaint failed to state which terms of the policy had been breached, and because St. Paul had paid the entire policy limits. St. Paul averred the bad faith claim also was infirm because St. Paul's conduct was reasonable as a matter of law. Further, there was no bad faith liability because there was no coverage under the policy. The lack of coverage argument was based on Carlton's failure to procure St. Paul's approval to exceed the allowed 2,500 miles per year under the antique automobile policy and Carlton's failure to mitigate his damage by leaving the car exposed to the elements.

The matter was fully briefed and argued. Thereafter, on August 28, 1992, the trial court granted summary judgment for St. Paul.

*Trial court's ruling.*

The trial court held there was no breach of contract because St. Paul paid the entire policy limit.

The trial court also ruled against Carlton on the bad faith claim. While recognizing that reasonableness ordinarily is a factual question not to be resolved on summary judgment, the trial court noted in appropriate cases the issue is one of law for the court.

In this regard, the trial court found: "On March 19, 1988, plaintiff was involved in a one car accident. Defendant received notice of a claim on October 14, 1988, along with a $2500 estimate of the damages. Defendant dispatched an appraiser to assess the damage and he reported his written estimate on Feb 7, 1989. On Feb 17, 1989, defendant sent its check for that amount less the deductible. Two months later defendant received an objection to that amount and re-opened its file. After a delay of five months due

to the plaintiff's father who was pursuing the claim being out of the country, plaintiff submitted another estimate. Due to a dispute over items in that estimate, plaintiff submitted another estimate on Dec 15, 1989. On Dec 21, 1989, the defendant sent the plaintiff a check for the remainder of his policy. The timeline of the actions taken by the insurer when it received information upon which to act, coupled with a four month delay due to plaintiff's admitted failure to respond to a request for information, is found to be reasonable as a matter of law."

Carlton appealed the judgment.

## CONTENTS

Carlton contends: the record contains no evidence to support the findings of the trial court excusing St. Paul's numerous delays and that led the trial court to find St. Paul's conduct reasonable as a matter of law; the excuses for St. Paul's delays identified in the trial court's order are not supported by the record; the trial court's order failed to address or discuss additional delay caused by St. Paul's inaction; the trial court could not impliedly find that Dukar was not St. Paul's agent; and, St. Paul is not entitled to summary judgment based on an allegation Carlton breached other provisions of the insurance contract.

We address these contentions in the discussion, *post.*

## DISCUSSION

1. *Standard of appellate review.*

Our review of the summary judgment motion requires that we apply the same three-step process to be engaged in by the trial court. (*AARTS Productions, Inc.* v. *Crocker National Bank* (1986) 179 Cal.App.3d 1061, 1064 [225 Cal.Rptr. 203].) "First, we identify the issues framed by the pleadings since it is these allegations to which the motion must respond by establishing a complete defense or otherwise showing there is no factual basis for relief on any theory reasonably contemplated by the opponent's pleading. [Citations.] [¶] Secondly, we determine whether the moving party's showing has established facts which negate the opponent's claim and justify a judgment in movant's favor. [Citations.] . . . [¶] [T]he third and final step is to determine whether the opposition demonstrates the existence of a triable, material factual issue. [Citation.]" (*Id.*, at pp. 1064-1065; accord, *Todd* v. *Dow* (1993) 19 Cal.App.4th 253, 258 [23 Cal.Rptr.2d 490].)

Our review is guided by the foregoing principles.

2. *Trial court properly held insurer's handling of claim was reasonable as a matter of law.*

a. *General principles.*

■ The ultimate test of bad faith liability in first party cases is whether the refusal to pay policy benefits, or alleged delay in paying, was unreasonable. (*Opsal* v. *United Services Auto. Assn.* (1991) 2 Cal.App.4th 1197, 1205 [10 Cal.Rptr.2d 352]; *Gourley* v. *State Farm Mut. Auto. Ins. Co.* (1991) 53 Cal.3d 121, 127 [3 Cal.Rptr.2d 666, 822 P.2d 374].) While the reasonableness of an insurer's claims handling conduct is ordinarily a question of fact, it becomes a question of law where the evidence is undisputed and but one inference can be drawn from the evidence. (*Paulfrey* v. *Blue Chip Stamps* (1983) 150 Cal.App.3d 187, 196 [197 Cal.Rptr. 501].)

b. *Summary of argument.*

■ Carlton contends the reasons for the insurer's delays specified in the trial court's order are unsupported by the record.

First, there is no evidence to support the finding the five-month delay between April 1989 and September 1989 was "due to the plaintiff's father who was pursuing the claim being out of the country." The evidence showed the father was abroad for *two months*, until September 10, *1988*. Further, Carlton was in Europe between February and April of 1989. Neither of these events relates to the five-month delay between April and September of 1989, and the trial court's factual finding to that effect is erroneous.

Second, the trial court found the delay between September 15 and December 15, 1989, was due to a dispute over items in the September 15, 1989 estimate. The record contains no evidence the insurer did anything between September 25 and December 15, 1989, to resolve this dispute.

Third, the trial court found there was a "four month delay due to plaintiff's admitted failure to respond to a request for information." However, a material factual dispute exists as to whether the insurer bears responsibility for this period of delay because the insurer did not advise Carlton it had contacted the repair shop for more information.

In addition, the trial court failed to address the approximately 30-day delay between early June 1988 and July 22, 1988, when the insurer's agent, Dukar, finally sent the father a loss notice form.

The trial court also did not address the 104-day delay between the date of the insurer's first inspection of the automobile on October 25, 1988, and the

preparation of a written estimate by the insurer's appraiser on February 7, 1989.

None of these contentions warrants reversal of the judgment.

    c.   *Trial court properly determined the insurer handled the claim reasonably.*

      (1)   *No triable issue as to Dukar's status as agent of insurer.*

Carlton argues Dukar was an agent of St. Paul and therefore the insurer received notice not on October 14, 1988, when St. Paul received the completed notice of loss form, but rather, in June 1988, when Dukar was given notice. Carlton submits there is evidence in the record to support the conclusion a reasonable insured could regard Dukar as St. Paul's agent. The application form the father filled out in June 1986 referred to Dukar as the "producing agent" and as the "Agency" for the policy. Further, the renewal form designated Dukar as the entity to call for answers to any questions related to the policy. Because a reasonable insured could believe Dukar was the insurer's agent, the trial court erred in disregarding any delay caused by the insurer between early June 1988 and October 14, 1988.

The argument is without merit.

Carlton did not dispute St. Paul's undisputed fact No. 4 to the effect that "St. Paul first received notice of [his] claim on October 14, 1988."

██ Further, Insurance Code sections 31 and 33, respectively, provide an insurance agent acts on behalf of an insurer, while an insurance broker transacts insurance "with, but not on behalf of, an insurer." Thus, a broker in securing a policy for a client "acts only as agent for the [in]sured." (*Maloney v. Rhode Island Ins. Co.* (1953) 115 Cal.App.2d 238, 244 [251 P.2d 1027].) Consistent therewith, the 1986 application indicates Condon & Skelly (Condon) was St. Paul's agent, and that Dukar, the producing agent, was *not* St. Paul's agent. Similarly, the declarations page for Carlton's 1987 renewal states Condon was the "Admin. Agent." Thus, Dukar was *not* St. Paul's agent.

██ Moreover, Carlton's focus on an alleged ambiguity in the policy as to Dukar's role is irrelevant. The issue is not whether a reasonable insured could regard Dukar as St. Paul's agent. Rather, the issue is whether Dukar as a matter of law was St. Paul's agent so as to impute Dukar's knowledge of the loss to St. Paul. Because Dukar was solely Carlton's agent, notice to Dukar did not constitute notice to St. Paul.

(2) *Insurer properly proceeded after receiving notice.*

Next, we scrutinize the insurer's conduct between October 14, 1988, when it received notice, and December 21, 1989, when it issued Carlton a check for the balance of the policy limits.

On October 25, 1988, 11 days after St. Paul received notice of the claimed $2,500 loss, Rizzo inspected the car.

Rizzo's subsequent delay in preparing an estimate was due to difficulty in obtaining parts for the rare automobile. On November 17, 1988, St. Paul received a call from the Bureau which indicated Challenger was having trouble obtaining parts. On December 28, 1988, St. Paul telephoned Rizzo for an update and was advised it was very difficult to obtain parts for Carlton's antique Citroen and an estimate could not be prepared without the cost of the parts. On February 7, 1989, after parts were located, Rizzo prepared a written estimate appraising the damages at $4,273.38.

Just 10 days later, on February 17, 1989, St. Paul issued a check to Carlton for $4,059.71 based on Rizzo's estimate less the deductible.

Over two months later, upon returning from Europe, Carlton wrote to St. Paul on April 28, 1989, stating the amount of the check would not cover the cost of repairs. Manifesting St. Paul's good faith in handling the instant claim, Donovan reopened the file to investigate a possible supplemental payment.

On or about May 22, 1989, Donovan telephoned Challenger to inquire about additional damages. She was advised the car was handmade and no parts were available.

On July 10, 1989, Donovan wrote to Carlton informing him Challenger had not yet submitted the required paperwork for a supplemental payment and she directed Carlton to contact Challenger to urge its cooperation.

On September 14, 1989, Carlton transmitted to Donovan a written estimate from SM World providing a range from $8,750 to $13,475 to repair the car.

Eleven days later, on September 25, 1989, based on the SM World estimate, Donovan wrote to Carlton stating that St. Paul would reinspect the car.

On December 15, 1989, Carlton sent St. Paul an estimate from Best of the West for the amount of $9,073.45.

Six days later, St. Paul paid Carlton the balance of the policy limits.

While the reasonableness of an insurer's claims handling conduct ordinarily is a factual question (*Paulfrey* v. *Blue Chip Stamps, supra,* 150 Cal.App.3d at p. 196), the only inference to be drawn from the foregoing is that St. Paul's handling of the claim was not unreasonable. St. Paul was not given notice of the loss until October 14, 1988. At that time, Carlton estimated the damage at $2,500. The subsequent delay in estimating the damage was due to the difficulty in obtaining parts for the car. Once the estimate was completed, St. Paul promptly paid Carlton $4,059.71 10 days later on February 17, 1989. Two months later, St. Paul in good faith reopened the claim at Carlton's request. Again, there were delays in obtaining an estimate required for the supplemental payment. Challenger did not supply Donovan with the required paperwork and on July 10, 1989, Donovan enlisted Carlton to obtain Challenger's cooperation. Finally, on December 15, 1989, Carlton procured a satisfactory estimate from Best of the West. Six days later, St. Paul paid the balance of the policy limits. The foregoing compels the conclusion St. Paul did not act in bad faith.

While the claim might have been handled more expeditiously in the period after September 25, 1989, when St. Paul indicated it would reinspect the car, in view of the totality the circumstances, such delay was not so unreasonable as to give rise to bad faith liability. Rather, St. Paul's "'pattern'" in handling Carlton's claim (see *Moradi-Shalal* v. *Fireman's Fund Ins. Companies* (1988) 46 Cal.3d 287, 303 [250 Cal.Rptr. 116, 758 P.2d 58].)—it promptly paid the claim after submission of Rizzo's estimate, reopened the file at Carlton's request, and timely paid the balance of the policy limits after receiving the estimate for supplemental damage—establishes it did not proceed in bad faith.[1]

d. *Carlton's challenge to trial court's reasoning fails.*

Carlton contends his father was abroad during July and August of *1988,* not between April and September 1989, and therefore the delays between April and September 1989 are not attributable to his father's absence. The argument is unavailing.

█  It is well settled a ruling or decision itself correct in law will not be disturbed on appeal merely because given for a wrong reason. (*D'Amico* v. *Board of Medical Examiners* (1974) 11 Cal.3d 1, 19 [112 Cal.Rptr. 786, 520

---

[1]In this regard, *Moradi-Shalal* held the Insurance Commissioner is authorized to impose administrative sanctions if investigation reveals a *pattern* of unfair settlement practices, as opposed to a single wrongful act. (*Moradi-Shalal, supra,* 46 Cal.3d at p. 303.)

P.2d 10].) Therefore, this court's task is to determine whether the trial court properly held the insurer's handling of the claim was reasonable, regardless of the considerations which may have moved the trial court to its conclusion. (*Ibid.*) As explained above, the trial court's decision is correct in result.

    e.   *Remaining contentions irrelevant.*

In view of our holding, it is unnecessary to reach any remaining arguments.

## DISPOSITION

The judgment is affirmed. St. Paul to recover costs on appeal.

Kitching, J., and Collins, J.,* concurred.

---

*Judge of the Los Angeles Superior Court sitting under assignment by the Chairperson of the Judicial Council.