OAKLAND–ALAMEDA COUNTY COLISEUM, INC., Plaintiff,

v.

NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA, Underwriters, Lloyd's of London, Executive Risk Indemnity Company, Gulf Insurance, Zurich American Insurance Company, formerly known as Zurich Insurance Company, Admiral Insurance, RLI Insurance Company, Continental Casualty Company, Federal Insurance Company and Does 1 through 50, inclusive, Defendants.

No. C06–2328 MHP.

United States District Court, N.D. California.

March 21, 2007.

Randy M. Hess, Duane W. Shewaga, Adleson, Hess & Kelly, APC, Campbell, CA, Jeffrey I. Ehrlich, The Ehrlich Law Firm, Claremont, CA, Michael J. Bidart, Ricardo Echeverria, Shernoff, Bidart & Darras, Claremont, CA, Richard H. Friedman, William S. Cummings, Friedman Rubin & White, Bremerton, WA, for plaintiff, Oakland–Alameda County Coliseum, Inc.

Jana I. Lubert, Douglas R. Irvine, Lewis Brisbois Bisgaard & Smith LLP, Los Angeles, CA, for defendant National Union Fire Ins. Co. of Pittsburgh, PA.

William C. Morison–Knox, Michael D. Prough, Peter E. Laurie, Morison–Knox Holden Melendez & Prough, LLP, Walnut Creek, CA, for defendant RLI Ins. Co.

W. Eric Blumhardt, Archer Norris, Walnut Creek, CA, David L. Koury, Mark D. Wilcox, Walker Wilcox Matousek LLP, Chicago, IL, for defendant Underwriters, Lloyd's of London.

Michael F. Perlis, Allan Cohen, Cary Joy Economou, Strook & Strook & Lavan LLP, Los Angeles, CA, for defendant Executive Risk Indemnity Co.

David J. Billings, David T. DiBiase, Anderson, McPharlin & Conners LLP, Los Angeles, CA, Paul F. Donsbach, Sybil Renick, Kutak Rock LLP, Irvine, CA, for defendant Gulf Ins. Zurich American Ins. Co.

Joanne J. Matousek, Dirk E. Ehlers, Duane Morris LLP, Chicago, IL, and Andrew G. Wanger, Duane Morris LLP, San Francisco, CA, for defendant Admiral Ins.

Linda Wendell Hsu, James Ronald Tenero, Selman Breitman LLP, San Francisco, CA, for defendant Continental Casualty Co.

## MEMORANDUM & ORDER

PATEL, District Judge.

### Defendants' Motions for Summary Judgment

On September 23, 2005 plaintiff Oakland–Alameda County Coliseum, Inc. ("OACC") brought this action against National Union Fire Insurance Company of Pittsburgh, PA ("National Union") and eight excess insurance carriers[1] alleging breach of contract, breach of the implied covenant of good faith and fair dealing, and seeking declaratory relief.

Now before the court are National Union's and the excess carriers' motions for summary judgment. Defendants claim that there is no coverage available under any of the policies at issue.[2] The court has considered the parties' arguments fully, and for the reasons set forth below, the court rules as follows.

### BACKGROUND

This insurance coverage dispute arises out of a lawsuit between OACC and the Raiders football team in the California Superior Court for Sacramento County. Prior to the lawsuit, OACC had purchased primary Director and Officer Liability ("D & O") insurance from National Union, and excess coverage from the excess carriers. The insurance companies claim that they are not required to cover OACC's litigation expenses because (1) OACC failed to provide timely notice of the claim related to the Raiders dispute as required by the terms of the policies and (2) as the Raiders lawsuit did not commence until after the

---

1. Defendant Federal Insurance Company has been dismissed from this action.

2. Defendant Executive Risk Indemnity, Inc. ("ERII") filed a "master" memorandum of points and authorities setting forth arguments regarding the National Union policy, the Executive Risk Indemnity, Inc. policy, and the Lloyd's of London policy, which the other defendants have joined. Defendants assert that the arguments raised in the master brief are applicable to each of the excess carriers based on the similarities of the policies. Each defendant also filed a separate statement regarding the specific factual variations at issue with respect to each respective policy.

expiration of the policies, no claim was made during the policy period.

### I. *The Insurance Policies*

OACC's primary insurer was National Union, which issued D & O Insurance and Company Reimbursement Policy No. 483–53–98. The National Union policy is a "claims-made-and-reported" policy, meaning that coverage is available only for claims made against the insureds (OACC) and reported to the insurer during the policy period. The policy's original declarations page defines the policy period as follows: "ITEM 3. POLICY PERIOD: From July 01, 1996 to July 01, 1997 (12:01 A.M. Standard Time at the address stated in Item 1)". Endorsement Number 14 of the policy states that, in consideration of an additional premium of $4,059, "Item 3 of the declarations, Policy Period", is amended to read as follows: "From: *July 01, 1996* To: *July 31, 1997* (12:01 A.M., standard time at the address stated in Item 1)". The policy explicitly limits coverage to claims made and reported during the policy period, and states that providing "written notice to the Insurer as soon as practicable during the Policy Period" is a "condition precedent to the obligations of the Insurer" under the policy.

In addition to the primary National Union policy, OACC purchased a "tower" of excess policies from the eight excess carriers. Although each excess policy has its own specific language, each policy provides that the policy period is the same as that of the primary policy. In addition, defendants claim that each of the excess policies are "claims-made-and-reported" policies, though OACC asserts that none of the excess policies can be characterized in this manner based on the language used in each policy.

### II. *OACC's Initial Notice of the Raiders Dispute*

On July 31, 1997, counsel for OACC sent a letter via Federal Express to National Union titled "Notice of Claims and Circumstances," stating that the purpose of the letter was "to notify you of certain circumstances that have come to the attention of the Coliseum and its officers and directors which may constitute or give rise to a claim and may require a defense and/or indemnity under your policies ...." The notice contained thirteen numbered paragraphs, the first of which describes the Raiders' allegations against OACC. In regard to these allegations, the notice states that "the directors and officers of the Coliseum believe ... that the Raiders may assert a claim of wrongful acts based on these allegations." OACC's counsel also faxed a copy of the notice to OACC's insurance broker, Cooper & Cook, directing that it be sent that day to OACC's carriers. Cooper & Cook forwarded the notice to National Union and Tri–City, the wholesaler who brokered the placement of OACC's primary and excess insurance policies. The notice arrived at National Union at 5:09 p.m. on July 31, 1997. Neither OACC, National Union, Cooper & Cook nor Tri–City provided notice to the excess carriers that day.

### III. *The Raiders Lawsuit and OACC's Notices to Defendants*

On September 29, 1997 OACC, the City of Oakland, the County of Alameda, and OACC Financing Corporation filed a complaint against the Raiders in the California Superior Court for Sacramento County seeking declaratory relief. On July 7, 1998 the Raiders filed a cross-complaint against OACC and one of its directors, Edwin DeSilva, alleging negligent misrepresentation and intentional misrepresentation. The Raiders lawsuit proceeded to trial and on August 27, 2003 a jury returned a verdict in favor of the Raiders on their negligent misrepresentation claim in the amount of $34,303,135. The jury also entered a verdict in favor of OACC on the Raiders' intentional misrepresentation claims, and judgment was entered in favor of DeSilva on all claims. OACC appealed. OACC moved for judgment notwithstanding the verdict (JNOV) on the negligent

misrepresentation claim, and the trial court denied the motion. On November 17, 2006, the California Court of Appeal reversed the denial of JNOV and ordered that judgment be entered in favor of OACC. *Oakland Raiders v. Oakland–Alameda County Coliseum, Inc.*, 144 Cal. App.4th 1175, 51 Cal.Rptr.3d 144 (2006).

On October 21, 1997 National Union informed OACC's counsel that they would not accept the July 31, 1997 Notice because it lacked sufficient detail. The letter did not raise any objections regarding the timing of the Notice. On July 27, 1998 OACC tendered the Raiders lawsuit to National Union. On October 27, 1998 National Union sent a letter to OACC denying coverage for the claims, arguing that the claims fell within a policy exclusion for claims arising from breach of contract, and were barred under California law because they involved willful misconduct. Again, National Union made no mention of the timing of the July 27, 1998 tender in this letter.

On April 14, 1999 National Union agreed (subject to a reservation of rights) to provide DeSilva a defense in the Raiders lawsuit based on the July 31, 1997 notice. National Union has paid roughly $6 million in defense costs for DeSilva. After National Union agreed to provide coverage, counsel for DeSilva notified each of the excess carriers of the Raiders lawsuit by letter dated April 29, 1999. Each excess carrier subsequently denied coverage based on the fact that the claim had not been made and reported during the respective policy periods, all of which were identical to that of the National Union period.

## IV. *The 2003 Letters*

On September 17, 2003, Cooper & Cook sent letters to the excess carriers stating that it had received a notice of claims and circumstances from OACC on July 31, 1997. The letters stated that Cooper & Cook had immediately forwarded the July 31, 1997 notice to Tri–City for handling. The excess carriers deny that either Cooper & Cook or Tri–City were their agents at any time between July 1, 1996 and the date of the September 2003 letters.

In December 2003, counsel for OACC sent two letters to the excess carriers informing them that they were tendering the Raiders lawsuit for the first time, and requesting that the insurers confirm coverage under their respective policies. The excess carriers each notified OACC's counsel that they were denying coverage.

## V. *The Instant Litigation*

OACC filed this action against National Union and the excess insurers on September 23, 2005 in California Superior Court for the County of Alameda, alleging breach of contract, breach of the implied covenant of good faith and fair dealing, and seeking declaratory relief. Defendant RLI Insurance Company removed the action to this court on March 31, 2006. Defendants now move for summary judgment that OACC is not entitled to coverage for the Raiders lawsuit under any of the policies. According to OACC, this summary judgment motion represents the first time that National Union has asserted the 12:01 a.m. deadline as a basis for denial of coverage.

## VI. *The California Court of Appeal Decision and Supplemental Briefing*

The California Court of Appeal decision reversing the trial court's denial of JNOV was issued after oral argument on this motion. On December 27, 2006 this court ordered the parties to provide supplemental briefing as to whether, in light of the California Court of Appeal decision, any new issues existed that should be considered regarding defendants' motion for summary judgment that had not previously been briefed by the parties. OACC has advised the court that, following the reversal of the trial court's judgment, OACC settled the Raiders lawsuit, and that the

amount in controversy in the instant action is now approximately $22 million, plus interest. OACC therefore does not oppose the dismissal, without prejudice, of its claims against all defendants except National Union, the London Insurers and Executive Risk Indemnity, Inc. (collectively "the remaining defendants"), provided that the additional carriers are ordered to maintain intact for twelve months their files concerning OACC.

Apart from the dismissal of the excess carriers, OACC claims that neither the Court of Appeal decision nor the settlement injects any issues into the instant motion that have not previously been briefed. The remaining defendants disagree. In their supplemental brief, ERII and the London Insurers for the first time raise the claim that the jury's finding of negligent misrepresentation, which according to these defendants was undisturbed by the California Court of Appeal decision, constitutes a complete defense to the OACC's claims against defendants based on California Insurance Code section 533.[3] National Union's supplemental brief raises a host of additional factual and legal arguments related to the initial summary judgment motion that appear to have no connection to the California Court of Appeal decision.

*LEGAL STANDARD*

Summary judgment is proper when the pleadings, discovery and affidavits show that there is "no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). Material facts are those which may affect the outcome of the case. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A dispute as to a material fact is genuine if there is suffi-

cient evidence for a reasonable jury to return a verdict for the nonmoving party. *Id.* The moving party for summary judgment bears the burden of identifying those portions of the pleadings, discovery and affidavits that demonstrate the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). On an issue for which the opposing party will have the burden of proof at trial, the moving party need only point out "that there is an absence of evidence to support the nonmoving party's case." *Id.*

Once the moving party meets its initial burden, the nonmoving party must go beyond the pleadings and, by its own affidavits or discovery, "set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). Mere allegations or denials do not defeat a moving party's allegations. *Id.; see also Gasaway v. Northwestern Mut. Life Ins. Co.*, 26 F.3d 957, 960 (9th Cir.1994). Nor is it sufficient for the opposing party simply to raise issues as to the credibility of the moving party's evidence. *See National Union Fire Ins. Co. v. Argonaut Ins. Co.*, 701 F.2d 95, 97 (9th Cir.1983). If the nonmoving party fails to show that there is a genuine issue for trial, "the moving party is entitled to judgment as a matter of law." *Celotex Corp.*, 477 U.S. at 323, 106 S.Ct. 2548.

On motion for summary judgment, the court does not make credibility determinations, for "the weighing of evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Liberty Lobby*, 477 U.S. at 249, 106 S.Ct. 2505. Inferences to be drawn from the facts must be viewed in the light most favorable to the party opposing the

---

**3.** California Insurance Code section 533 provides, in its entirety: "An insurer is not liable for a loss caused by the wilful act of the insured; but he is not exonerated by the negligence of the insured, or of the insured's agents or others."

motion. *See Masson v. New Yorker Magazine,* 501 U.S. 496, 520, 111 S.Ct. 2419, 115 L.Ed.2d 447 (1991).

## DISCUSSION

### I. *National Union*

Defendants[4] argue that OACC is not entitled to coverage from National Union based on the fact that OACC's notice of the Raiders claim was made after 12:01 a.m. on July 31, 1997. Defendants allege that, under the unambiguous terms of the National Union policy, the policy period ended at 12:01 a.m. on July 31, 1997, and that OACC was required to report the claim during the policy period in order to secure coverage. Defendants further allege that, regardless of when the initial notice was served vis a vis the expiration of the policy period, the July 31, 1997 letter did not report an actual claim. Rather, defendants allege that no "claim" was made against OACC or DeSilva until the Raiders filed their cross-complaint on July 7, 1998, nearly one year after the expiration of the policy. As this was not a claim made during the policy period, defendants argue that no coverage is available for the lawsuit.

### A. *The Effectiveness of the July 31, 1997 Letter*

OACC raises several arguments in response to defendants' claim that OACC was required to provide notice prior to 12:01 a.m. on July 31, 1997. First, OACC interprets the policy as providing that mailing the notice on July 31, at any time, satisfied the policy's notice requirement. Second, OACC claims that the policy is ambiguous as to whether the "12:01 a.m." provision applies to the beginning and end of the policy period or to the beginning only. Third, OACC claims that National Union's nine-year delay in asserting the

timing provision amounts to a waiver of that defense or requires that National Union be estopped from raising it. Finally, OACC argues that any noncompliance with the terms of the policy was de minimis and should therefore be excused by the court.

#### 1. *Construction of the Policy Provisions*

California courts apply a three-step process for analyzing insurance contracts. *In re K F Dairies, Inc. & Affiliates,* 224 F.3d 922, 925 (9th Cir.2000). First, courts "examine the 'clear and explicit' meanings of the terms used in their 'ordinary and popular sense.'" *Id.* (quoting *AIU Ins. Co. v. Superior Ct.,* 51 Cal.3d 807, 822, 274 Cal.Rptr. 820, 799 P.2d 1253 (1990)). "[I]f the meaning a layperson would ascribe to contract language is not ambiguous, [courts] apply that meaning." *Id.* at 925–26. If a term is found to be ambiguous, courts move to the second step and resolve the ambiguity "by looking to the expectations of a reasonable insured." *Id.* at 926 (internal quotations omitted). "Under California law, an insurance policy provision is ambiguous when it is capable of two or more constructions both of which are reasonable." *Id.* (internal quotations omitted). If, after the first two steps, ambiguity remains, the term is "construed against the party who caused the ambiguity to exist." *Id.* Given California's general policy of resolving ambiguities in favor of coverage, the party causing the ambiguity in the third step is "almost always the insurer." *Id.*

OACC asserts that two provisions of the National Union policy are ambiguous and therefore must be construed against defendants. First, OACC points to Paragraph 8 of the policy, which pro-

---

**4.** Although this section applies only to the National Union policy, the arguments before the court have been joined by all defendants.

vides: "If mailed, the date of mailing of such notice shall constitute the date that such notice was given and proof of mailing shall constitute proof of notice." OACC asserts that, because Paragraph 8 only specifies "date of mailing" and not "time of mailing," this provision means that any notice mailed on July 31, 1997 is deemed given within the policy period. Under OACC's argument, because mailing is typically measured by date and not by time, Paragraph 8 dispenses with any timing requirement for notices mailed on the last day of coverage.

OACC's interpretation is not a reasonable construction of this provision. The time of day that notice is given is only relevant if the notice is given on one of two days during the policy period: July 1, 1996 or July 31, 1997. If OACC had mailed its notice on any other day during the policy period, timing would be irrelevant and Paragraph 8 would end the inquiry as to when the notice was deemed given. However, because OACC chose to provide its notice on July 31, 1997, it was subject to the additional requirement of providing the notice prior to 12:01 a.m. Therefore, in addition to the provision in Paragraph 8 that OACC's notice was deemed provided on the particular *date* of July 31, 1997, OACC was required to establish that it was sent at the appropriate *time*. The fact that Paragraph 8 does not mention time does not mean that timing is irrelevant for all mailed notices. The specific timing requirements of the policy period control here, not the general terms of Paragraph 8. There is no ambiguity in this

provision. Because OACC admits that it sent the notice after 12:01 a.m. on July 31, 1997, they cannot avail themselves of Paragraph 8.

■ The second provision that OACC cites is the 12:01 a.m. limitation to the policy period. OACC alleges that the 12:01 a.m. limitation applies only to the policy's inception date, not its expiration date. In this regard, OACC's argument is based not on the "clear and explicit" meaning of any terms, but on the visual formatting of the printed policy. OACC claims that, on the declarations page, the reference to 12:01 a.m. is "directly under, and flush with, the date that coverage begins," and the expiration date "stands by itself, without any text under it or purporting to modify it." Likewise, OACC claims that Endorsement 14, which modified the expiration date on the declarations page, is "formatted the same way, with the sole difference being that the expiration date is slightly closer to the inception date." According to OACC, this at least creates an ambiguity as to whether the time of day provision applies to the expiration date.

Assuming that this type of formatting could control the interpretation of a contract,[5] OACC's argument is once again unavailing. To begin with, OACC mischaracterizes the formatting of the declarations page. The time of day provision is not flush with the inception date. Rather, the provision is flush with the term "Policy Period." Under OACC's own logic, this would suggest that the time of day provision applies, indeed, to the entire "Policy

---

**5.** The lone case cited by OACC in support of its formatting argument is *American Star Ins. Co. v. Ins. Co. of the West*, 232 Cal.App.3d 1320, 284 Cal.Rptr. 45 (1991). In *American Star*, the court held that a limitation applied only to the categories listed above it with which the text of limitation was flush or indented. *Id.* at 1326–27, 284 Cal.Rptr. 45. The policy at issue in *American Star* was ar-

ranged in a "rigid 'outline' format" in which "[t]he typographical placement of text on the page corresponds to its place in the outline." *Id.* at 1326, 284 Cal.Rptr. 45. There is nothing about the format of the National Union policy to suggest that indentation and formatting were consciously employed to indicate the applicability of limitations.

Period." Furthermore, the fact that the expiration date "stands by itself" appears to be a result of the fact that the policy consists of a form into which the inception and expiration dates are later typed. The large space between the inception and expiration dates arises chiefly from the fact that the inception date is in "July," a month with relatively few letters in its name. Likewise, the time of day provision on Endorsement 14, though flush with the inception date, extends across the entire date provision. Under OACC's logic, this suggests once again that the time of day provision applies to both dates. The court finds no ambiguity in the applicability of the 12:01 a.m. time limitation. The time limitation applies both to the inception date and the expiration date.

### 2. *Waiver and Estoppel*

■ OACC alleges that, by failing to assert the timeliness of OACC's notice as a basis for denial of coverage until this litigation, National Union has waived that defense. Waiver is a question of fact under California law. *Intel Corp. v. Hartford Accident & Indemn. Co.*, 952 F.2d 1551, 1559 (9th Cir.1991). "California courts will find waiver when a party intentionally relinquishes a right, or when that party's acts are so inconsistent with an intent to enforce the right as to induce a reasonable belief that such right has been relinquished." *Id.* (citing *Rheem Mfg. Co. v. United States*, 57 Cal.2d 621, 21 Cal. Rptr. 802, 371 P.2d 578 (1962)). In the insurance context, California courts have modified this rule such that "[i]n cases where waiver has been found, there is generally some element of misconduct by the insurer or detrimental reliance by the insured." *Intel Corp.*, 952 F.2d at 1559. If OACC has raised a genuine issue of material fact as to whether National Union has waived its timeliness defense, summary judgment must be denied.

■ OACC raises a number of arguments in support of its waiver claim. First, OACC points to the nine-year delay, arguing that the passage of time alone can constitute waiver. Cal. Ins.Code § 554 ("Delay in the presentation to an insurer of notice or proof of loss is waived, if caused by an act of his, or if he omits to make objection promptly and specifically upon that ground."); *National Am. Ins. Co. of Ca. v. Certain Underwriters at Lloyd's of London*, 93 F.3d 529, 538 (9th Cir.1996) (applying California law and upholding district court's finding that a two-year delay in asserting a late notice defense constituted a waiver of that defense). Delay alone is insufficient to constitute waiver absent "some element of misconduct by the insurer or detrimental reliance by the insured." *Intel Corp.*, 952 F.2d at 1599–60. Accordingly, in addition to this delay, OACC must point to some misleading or otherwise improper conduct in order to show waiver.

■ In combination with this delay, OACC argues that National Union was required by California law to state in writing all bases for its decision to deny coverage to OACC, and that by providing written notice of its denial of coverage without mentioning the timeliness of OACC's notice National Union waived that defense. *See* CAL. INS. CODE § 790.03(h)(13). While decisions have been read for the proposition that "whatever exclusions an insurer fails to include in a letter denying coverage are lost forever," *Intel Corp.*, 952 F.2d at 1560 (discussing cases), courts have held that "a finding of waiver should not be so automatic." *Id.* The California Supreme Court has explicitly rejected this automatic rule, holding that "an insurer does not impliedly waive coverage defenses it fails to mention when it denies the claim." *Waller v. Truck Ins. Exchange*, 11 Cal.4th 1, 31, 44 Cal.Rptr.2d 370, 900 P.2d

619 (1995). Rather, "waiver requires the insurer to intentionally relinquish its right to deny coverage[,] and ... a denial of coverage on one ground does not, absent clear and convincing evidence to suggest otherwise, impliedly waive grounds not stated in the denial." *Id.* Because OACC has not shown such clear and convincing evidence of intentional relinquishment, OACC has not shown that National Union waived its timeliness defense.

■ Finally, OACC points to the fact that National Union accepted the defense of DeSilva and paid $6 million under the policy issued to OACC based on the July 31, 1997 notice. This argument is unconvincing, given the fact that National Union provided this money subject to a reservation of rights. It therefore does not constitute clear and convincing evidence of waiver as required under California law.

■ Similarly, OACC claims that National Union should be estopped from raising the deadline as a defense. Like waiver, estoppel is a question of fact. *United States v. Garan,* 12 F.3d 858, 860 (9th Cir.1993). Under California law, estoppel has four elements:

> (1) The party to be estopped must know the facts; (2) he must intend that his conduct shall be acted upon, or must so act that the party asserting the estoppel had the right to believe that it was so intended; (3) the party asserting the estoppel must be ignorant of the true state of facts; and, (4) he must rely upon the conduct to his injury.

*Spray, Gould & Bowers v. Associated Int'l Ins. Co.,* 71 Cal.App.4th 1260, 1268, 84 Cal.Rptr.2d 552 (1999). Unlike waiver, which requires misconduct on the part of the insurer *or* reliance on the part of the insured, estoppel requires both misconduct and reliance.

■ OACC makes two arguments in support of its estoppel claim. First, OACC blames its counsel for failing to transmit the notice prior to 12:01 a.m. on July 31, 1997, and blames its insurance broker (to which the notice was sent) for failing to advise OACC's counsel of the deadline. OACC claims that these errors on the part of its counsel and insurance broker would support claims against these professionals, but the statutes of limitations on any such claims have long since run. Therefore, OACC claims that National Union's failure to assert the timeliness defense deprived OACC of its claims against its counsel and insurance broker. OACC cites no authority supporting an estoppel claim based on such a convoluted argument, and the court finds this scenario unconvincing. At the very least, OACC would have to allege that National Union knew of the omissions on the part of OACC's counsel and insurance broker, and OACC has raised no issues of fact supporting this conclusion.

■ OACC's second estoppel argument asserts that National Union's delay in raising the issue precluded OACC from taking measures to obtain alternative insurance coverage. This, too, is unconvincing. National Union had denied coverage on a variety of grounds, and nothing prevented OACC from seeking alternative coverage. There is nothing to suggest that OACC would have attempted to secure additional coverage if National Union had raised the deadline defense.

OACC has thus not raised any material issues of fact regarding waiver or estoppel.

**3. *Equitable Excusal of the Reporting Requirement***

■ As a final defense to defendants' timeliness claim regarding the National Union policy, OACC asserts that the reporting requirement should be equitably excused by the court. Under California law, a trial court may equitably excuse the satisfaction of conditions in insurance con-

tracts in order to avoid a forfeiture of coverage. *Root v. American Equity Specialty Ins. Co.*, 130 Cal.App.4th 926, 947–948, 30 Cal.Rptr.3d 631 (2005). Such excusal is appropriate in certain circumstances where the reporting requirement functions as a condition rather than "an element of the fundamental risk insured." *Id.* at 943, 30 Cal.Rptr.3d 631. Timely written notice is explicitly identified as a "condition precedent to the obligations of the Insurer" under the terms of the National Union policy, and therefore OACC's failure to provide notice within the policy period is subject to the equitable rule in *Root*.

The possible equitable excuse of conditions is "flexible and nuanced." *Id.* at 947, 30 Cal.Rptr.3d 631. When considering equitable excusal, "the factually intense nature of the inquiry may make summary judgment more difficult for insurers to obtain in certain cases . . . ." *Id.* at 948, 30 Cal.Rptr.3d 631. There are two key factual issues bearing on the applicability of *Root* to the instant action. The first involves when OACC became aware of the Raiders claim in relation to the date on which it gave notice of the claim. The second relates to the availability of an extension of the policy period.

In *Root*, the insured was an attorney whose former client filed a malpractice action against him three days before his malpractice insurance expired. *Id.* at 930, 30 Cal.Rptr.3d 631. The attorney did not learn of the suit until he returned from a vacation two days after the policy expired, and immediately notified the carrier of the claim. *Id.* at 931, 30 Cal.Rptr.3d 631. In the instant action, counsel for the Raiders accused OACC of misrepresentations, demanded millions of dollars in restitution, and threatened litigation in May 1997, more than two months before the policy expired. McClain Dec. ¶¶ 5–7. OACC nonetheless waited until the expiration date of the policy to provide notice to the carriers. While the facts of this case are therefore distinct from those of *Root*, it does not necessarily follow that the equitable remedy in *Root* is unavailable here. Unlike in *Root*, there was no actual litigation at the time that OACC's insurance policies expired, and OACC's delay in reporting the claim may have resulted from attempts to resolve the dispute short of legal action. In other words, OACC was not necessarily required to notify its carrier immediately once the Raiders threatened litigation. OACC simply advised its carriers of all outstanding claims as the policy expired.

Additionally, the court in *Root, id.* at 948, 30 Cal.Rptr.3d 631, held that "the fact that the insurer did not give the insured the opportunity to buy an extended reporting endorsement" may have been significant in determining whether to excuse the condition. Here, defendants claim that OACC was offered—and declined to accept—a number of opportunities to purchase additional coverage, either by extending the policy as much a 90 days or by purchasing a "tail" of 1, 2, 3 or 6 years. OACC seems to suggest that these options were only available if the insurer, rather than the insured, elected not to renew the policy, and were therefore not available in light of the fact that OACC, rather than the defendants, chose not to renew the policy. This factual issue is not dispositive and appears to be unsettled.

Because this is defendants' motion for summary judgment, the court need not decide at this stage whether OACC is entitled to equitable relief of this kind. However, in light of OACC's *de minimis* noncompliance with the notice provision, OACC has raised sufficient factual questions regarding the possibility of equitable excusal to withstand summary judgment in favor of National Union.

### B. Whether a "Claim" was Made During the Policy Period

■ In addition to the timeliness argument, defendants assert that no "claim" was "made" during the policy period, as required for coverage. Specifically, defendants argue that the only "claim" at issue is the Raiders cross-complaint, which was not filed until 1998. According to National Union, OACC did not refer to the July 31, 1997 letter as a report of an actual "claim," but rather as a "notice of the circumstances and alleged wrongful acts" and "potential claims." Defendants therefore argue that no coverage exists for the Raiders litigation.

In response, OACC argues that the policy does not define the term "claim," and that there is no basis to apply defendants' proposed restrictive definition. OACC asserts the definition of "claim" as defined by California insurance law: an "assertion, demand or challenge of something as a right; the assertion of a liability to the party making it to do some service or pay a sum of money." *Insurance Co. of State of Pennsylvania v. Associated Int'l Ins. Co.*, 922 F.2d 516, 522 (9th Cir.1990). OACC therefore argues that the Raiders' initial demand that OACC make them whole for claimed losses, combined with an explicit threat of litigation, amounted to a "claim" for the purposes of the National Union policy. The Raiders' initial demands and threats were a "demand … of something as a right" and an "assertion of a liability" to the Raiders on the part of OACC. The circumstances of which OACC provided notice on July 31, 1997 therefore constituted a "claim" within the meaning of California insurance law. Defendants are not entitled to a judgment as a matter of law to the contrary.

## II. The London Insurers and ERII

Defendants claim that no coverage is available under the excess policies for reasons similar to the arguments made regarding the National Union policy. Because the excess carriers each received notice of the Raiders lawsuit for the first time on April 29, 1999, defendants allege that OACC failed to provide notice within the policy periods of each excess policy, as required by the policies. Defendants further claim that OACC's notice to Cooper & Cook and Tri–City did not constitute notice to any of the excess carriers because Cooper & Cook and Tri–City were insurance brokers and not agents of the excess carriers. Finally, defendants also allege that no "claim" was made against OACC during the policy period, and thus no coverage is available regardless of any notice issues.[6]

Preliminarily, OACC notes that the excess policies, like the National Union policy, fail to define the term "claim." Accordingly, defendants' arguments that the initial dispute between OACC and the Raiders as reported in OACC's July 31, 1997 letter was not a "claim" are without merit for the reasons discussed above. Regarding the agency issue, OACC claims that it requires additional discovery in order to determine whether Cooper & Cook and Tri–City were agents of the excess carriers, and has accordingly moved pursuant to Federal Rule of Civil Procedure 56(f) to continue the excess carriers' motion for summary judgment in order to obtain further discovery. Finally, OACC

---

**6.** Defendants also claim that no coverage is available under any excess policy until a claim is paid pursuant to each excess policy's underlying policy. Defendants therefore argue that, because there is no coverage available from National Union, there is thus no coverage available from the excess carriers. As discussed above, defendants have not shown that coverage from National Union is unavailable as a matter of law. Accordingly, this argument is ineffective.

argues that it was not required to report the Raiders claim to the excess carriers within the policy period because none of the excess policies were "claims-made-and-reported" policies. OACC also claims that this distinction renders the "notice prejudice" doctrine applicable to the excess policies, and that summary judgment is inappropriate because the excess carriers have failed to demonstrate that they were prejudiced by OACC's late reporting.

### A. *Agency Relationship*

■ Defendants argue that Cooper & Cook and Tri–City are insurance brokers who acted on behalf of OACC, not insurance agents acting on behalf of the excess carriers. Defendants raise three arguments in support of this claim. First, defendants assert that OACC's applications for insurance dated June 7, 1996 indicate that Cooper & Cook was acting as its insurance broker. Second, defendants state that Cooper & Cook indicated by letter dated September 17, 2003 that it had forwarded OACC's notice to Tri–City for handling as Tri–City was the wholesaler who brokered the placement of OACC's D & O liability program. Finally, defendants assert that, under California law, an individual cannot act as an insurance agent absent the filing of a notice of the agent's appointment by the insurer with the Department of Insurance. Because the excess carriers never filed such notices, defendants claim, Cooper & Cook and Tri–City could not have acted as the carriers' agents.

OACC does not assert a factual argument supporting the conclusion Cooper & Cook and Tri–City acted as the excess carriers' agents. Rather, OACC asserts that additional discovery is required in order to determine whether such agency relationships existed. OACC seeks the following forms of evidence: full responses to its outstanding written discovery requests, including claims files, underwriting files and producer agreements from the excess carriers; full written discovery responses from Tri–City; depositions of the excess carriers' declarants who purported to establish that there were no agency relationships; and depositions of persons most knowledgeable at Cooper & Cook and Tri–City regarding their relationships with the excess carriers and the manner in which the July 31, 1997 notice was handled. If such evidence would support a finding of agency relations—i.e., if OACC requires such evidence to oppose defendants' claim that OACC's notice was ineffective—the court may continue the excess carriers' motions for summary judgment to permit OACC to conduct the additional discover. Fed.R.Civ.P. 56(f).

■ California law draws a distinction between insurance brokers and insurance agents. An insurance agent is "a person authorized, by and on behalf of an insurer, to transact all classes of insurance other than life insurance." Cal. Ins.Code § 31. An insurance broker is "a person who, for compensation and on behalf of another person, transacts insurance other than life with, but not on behalf of, an insurer." Cal. Ins.Code § 33. However, California law further recognizes that a single entity may act as both an insurance broker and an insurance agent. *Maloney v. Rhode Island Ins. Co.*, 115 Cal.App.2d 238, 244, 251 P.2d 1027 (1953) (holding that Insurance Code Section 33 "does not declare that if the broker assumes to act for and on behalf of the insurer that an actual agency cannot be created"). Although the California Insurance Code has since been amended to allow insurance brokers licensed only as brokers to act as insurance agents "in collecting and transmitting premium or return premium funds and delivering policies and other documents evidencing insurance," Cal. Ins.Code § 1732, the Insurance Code further provides that

insurance agents "shall not act as an agent of an insurer unless the insurer has filed with the commissioner a notice of appointment, executed by the insurer, appointing the licensee as the insurer's agent." Cal. Ins.Code § 1704(a). This latter provision may simply impose further requirements on the conduct of an insurance agent, rather than establishing additional criteria for the creation of an agency relationship. In other words, it may be unlawful for an entity to act as an agent of the insurer without complying with section 1704(a), but that entity would still constitute an insurance agent for the present purposes.

It appears undisputed that none of the excess carriers has filed a notice with the Insurance Commissioner appointing either Cooper & Cook or Tri–City as their insurance agents. Regardless of whether these entities were actual agents based on formal legal requirements, however, an agency relationship can exist outside the formal provisions of the Insurance Code. OACC's notice to Cooper & Cook and Tri–City may have been effective if the intermediaries were the "ostensible agents" of the excess carriers.

■■■■ In this regard the case of *Gulf Ins. Co. v. TIG Ins. Co.*, 86 Cal.App.4th 422, 103 Cal.Rptr.2d 305 (2001) is instructive. There, the trial court entered judgment in favor of Gulf, and TIG appealed, arguing that Gulf had failed to report a claim within the policy's one-year reporting deadline. *Id.* at 438, 103 Cal.Rptr.2d 305. Gulf had provided notice to a third party, Pinnacle, and the issue on appeal was whether Pinnacle acted as TIG's agent. *Id.* TIG argued that there was no evidence to support actual agency, and Gulf argued that Pinnacle was TIG's ostensible agent. *Id.* Under California law, "[t]o establish ostensible authority in an agent, it must be shown the principal, intentionally or by want of ordinary care has caused or allowed a third person to believe the agent possesses such authority." *Id.* (internal quotations omitted). Ostensible authority is "established through the acts or declarations of the principal." *Id.* The court therefore upheld the trial judgment because substantial evidence supported the finding of ostensible agency. *Id.*

■■■■ The question of whether one party acts as another's ostensible agent is one of fact.[7] *Id.* Accordingly, if OACC can provide evidence that the excess carriers, through their "acts or declarations," cause or allowed OACC to believe that the intermediaries acted as the excess carriers' agents, OACC's notice to the intermediaries may be effective. OACC has stated that its counsel believed that providing notice to Cooper & Cook was effective, and that Cooper & Cook believed forwarding the notice to Tri–City was also effective. Additional discovery may reveal whether the excess carriers' conduct contributed to this belief. Accordingly, OACC is entitled to pursue discovery related to the alleged agency relationships between the excess carriers and the intermediaries.

B. *Applicability of the Notice–Prejudice Requirement*

■■■■ OACC argues that, because none of the excess policies can be interpreted as "claims-made-and-reported" policies, the excess policies are "claims-made" policies. The Ninth Circuit has held that, under California law, the "notice prejudice" rule applies to "claims-made" policies. *Pension*

---

7. Defendants claim that agency is a question of law, citing *Carlton v. St. Paul Mercury Ins. Co.*, 30 Cal.App.4th 1450, 1457, 36 Cal. Rptr.2d 229 (1994). The court in *Carlton* simply rejected the argument that an agency relationship exists if a reasonable insured would so conclude. *Id.* Thus, while the determination of an agency relationship is a legal conclusion, it involves a factual inquiry subject to discovery.

*Trust Fund for Operating Eng'rs v. Fed. Ins. Co.*, 307 F.3d 944, 957 (9th Cir.2002). This means that late notice of a claim made during the reporting period cannot support a denial of coverage unless the insurer was prejudiced by the delay in providing notice. *Id.* As the existence of prejudice is a factual inquiry, the fact that the excess carriers have not asserted prejudice would preclude a finding of summary judgment if the excess policies are "claims-made" policies.

▮▮▮▮ The notice provision of the ERII policy states that notice of claims shall be given "as soon as practicable." Defs' Exh. 40 at 370. Interpreting identical language in a separate case, the Ninth Circuit held that a policy containing this provision "cannot be treated as a claims-made-and-reported policy." *Id.* at 956. Although the ERII policy also states that it "follows form" to the Lloyd's Policy, defendants acknowledge that this provision is subject to the ERII policy's own specific terms and conditions. Accordingly, the "as soon as practicable" provision supersedes the "follows form" clause, and the ERII policy is a "claims-made" policy rather than a "claims-made-and-reported" policy. ERII is therefore subject to the notice-prejudice rule and, as ERII has shown no prejudice arising from OACC's allegedly late notice, summary judgment in favor of ERII is inappropriate.

▮▮▮ The Lloyd's policy, an excess directors and officers policy, imposes a sixty-day time limit for reporting claims against directors and officers. Defs' Exh. 61 at 500–01. Like the ERII policy, the Lloyd's policy "follows form" to the underlying policy—here, the National Union policy. There is nothing in the Lloyd's policy to contradict the claims-made-and-reported nature of the National Union policy. Accordingly, the notice-prejudice rule does not apply to the Lloyd's policy.

## III. *California Insurance Code Section 533*

▮▮▮ In their supplemental briefing, ERII and the London Insurers for the first time allege that defendants are absolved of liability by California Insurance Code section 533. Defendants ambitiously argue that the California Court of Appeal's vacatur of the trial court's judgment left intact the jury's conclusion that the Raiders were induced by OACC's negligent misrepresentations to enter into the agreements giving rise to the Raiders litigation.

In support of their argument that section 533, which states that an insurer "is not exonerated by the negligence of the insured," bars coverage for negligent misrepresentation, defendants cite three cases. The first, *Dykstra v. Foremost Ins. Co.*, 14 Cal.App.4th 361, 367, 17 Cal. Rptr.2d 543 (1993), did not hold that negligent misrepresentation was covered by section 533, but held that negligent misrepresentation was excluded from coverage in that case by the terms of the insurance policy. The second, *St. Paul Fire & Marine Ins. Co. v. Weiner*, 606 F.2d 864 (9th Cir.1979), merely holds that section 533 bars coverage for fraud and contains no mention of negligent misrepresentation. Finally, *Allstate Ins. Co. v. Hansten*, 765 F.Supp. 614, 616 (N.D.Cal.1991) (Vukasin, J.), held that a homeowner's insurance contract could not indemnify the insured for negligent representation, because "[n]egligent misrepresentation is included within the definition of fraud." However, the court in *Hansten* reached that conclusion based on California Civil Code section 1668, which provides: "All contracts which have for their object, directly or indirectly, to exempt anyone from responsibility for his own fraud, or willful injury to the person or property of another, or violation of law, whether willful or negligent, are against the policy of the law." This provi-

sion stands in sharp contrast to the statute at issue here, which provides: "An insurer is not liable for a loss caused by the wilful act of the insured; *but he is not exonerated by the negligence of the insured,* or of the insured's agents or others." Cal. Ins. Code § 533 (emphasis added). Accordingly, the "whether willful or negligent" language in section 1668 appears to refer to "violation of law" rather than tortious negligence such as negligent misrepresentation.

Furthermore, the policy at issue in *Hansten* was a homeowner's insurance policy covering accidents, not a D & O policy. In *Randi W. v. Muroc Joint Unified Sch. Dist.,* 14 Cal.4th 1066, 1078, 60 Cal.Rptr.2d 263, 929 P.2d 582 (1997), the California Supreme Court, citing section 533, assumed that "standard business liability *insurance* is available to cover instances of *negligent* misrepresentation or nondisclosure ... but is not available for ... *fraud* or *intentional* misconduct ...." (emphasis in original). Accordingly, even assuming that the jury's finding of negligent misrepresentation remains valid after the Court of Appeal decision, coverage for the Raiders lawsuit would not be barred by section 533.[8]

*CONCLUSION*

For the foregoing reasons, the court hereby rules as follows:

National Union's motion for summary judgment is DENIED.

ERII's motion for summary judgment is DENIED.

The London Insurers' motion for summary judgment is CONTINUED to permit discovery related to the issue of ostensible agency. OACC may take discovery re-

garding ostensible agency as it relates to ERII and the London Insurers.

All claims against Gulf Insurance, Zurich American Insurance Company, Admiral Insurance, RLI Insurance Company, and Continental Casualty Company are DISMISSED without prejudice. These parties are ORDERED to maintain intact their files concerning OACC for twelve months following the date of this order. The motions for summary judgment filed by these parties are DISMISSED as moot.

ERII's request for leave to file a surreply is DENIED.

IT IS SO ORDERED.

---

**8.** ERII has requested leave to file additional briefing in response to OACC's claim that Section 533 is inapplicable because the ERII policy is a "duty to defend" policy. Because the court concludes that Section 533 is inapplicable on other grounds, the court denies ERII's request.